[No. 7963]

## McDonald et al. v. Kummer et al.

1. Conveyance—*Reference to Plat*—*Construction*—Conveyance of lands by reference to a plat is to be construed in connection with the plat, for the purpose of identifying the premises conveyed.

Other evidence may be received not inconsistent with the plat.

Where a declaratory statement of the subdivision of lands differs from a plat filed therewith, the plat governs.

The proprietor of· eighty acres of land sub-divided it into five acre tracts, causing a statement or certificate of the subdivision to be filed in the office of the recorder of the county, accompanied by a plat. The plat showed a street four rods in width running from north to south through the center of the tract, the lots being upon each side thereof. The certificate described the lots as "twenty rods, fronting on said street, by forty rods deep east and west, said measurements running from the center of the street; but the above described roadway being reserved for the use of the public forever." A conveyance of the west half of one of the lots, lying on the east side of the street was held to carry no part of the street; but this resolution was expressly declared to be with the understanding that no part of the east half of the lot had been dedicated for or used as a public highway.

2. ——*Boundary Upon Public Highway*—The rule that a grant of lands bounded by a public highway extends to the middle thereof is qualified by the exception that where the title to the highway is in the state, or a municipality, title passes only to the line, and not the center of the street.

So when the grantor, being a public corporation, holding a street for public purposes disposes of the adjacent lots for private use.

The possible reversion provided by statute (Laws 1909 c. 212, Mills Stat. 1912, Sec. 7221) in case of the vacation of the highway, is a mere contingency which may never vest and does not affect the question.

*Error to Jefferson District Court.*—Hon. Charles McCall, Judge.

Mr. A. C. Pattee and William A. Dier, for plaintiffs in error.

Mr. Samuel W. Johnson, for defendants in error.

Mr. Justice Scott delivered the opinion of the court.

This is an action to determine and settle a disputed boundary line. The case was tried on an agreed statement of fact. From this it appears that on the 5th day of December, 1887, one William C. Smith, who was then the owner of the premises involved, filed for record with the county clerk and recorder of Jefferson county, his plat and statement duly acknowledged. This statement was as follows:

"Know all men by these presents: That I have subdivided the east one-half (E. ½) of the southeast quarter (SE. ¼) of section thirty-four (Sec. 34), township three south (T. 3 S.), range sixty-nine west (69), into five (5) acre tracts as indicated below by the plat and survey made by E. L. Berthoud, and I have reserved for the use of the public forever, a roadway or street through the center of said land running north and south one hundred and sixty (160) rods long by four (4) rods wide (east and west), said 5-acre tracts, being twenty (20) rods fronting on said street by forty (40) rods deep (east and west). Said measurements running from the center of said street, but the above described roadway being reserved for the said use forever. Signed at Golden, Colorado, this 5th day of December, A. D. 1887. (Signed William C. Smith.)"

The plat shows the roadway or street, from north to south through the center of the tract with eight tracts

or lots apparently of equal size on either side of the street, and numbered from one to sixteen inclusive. The premises in question consist of lots numbered one and two, lying on the east side of the dedicated street, called Center street; lot one being in the southeast corner of the tract and lot two adjoining lot one on the north, the west end of both lots abutting on Center street.

Plat and statement:

Smith's Subdivision
of
East South East ¼ of Section 34, Town. 3, South Range 64 West Jefferson Co. Colo.

Know all men by these presents, that I have subdivided the east one-half (½) of the southeast one-quarter (¼) of Section numbered thirty-four (34), Township three (3) south, Range sixty-nine (69) west, into five acre tracts as indicated below by the plat surveyed and made by E. L. Berthoud, and I have reserved for the use of the public forever a roadway or street through the center of said land, running north and south one hundred and sixty rods long by four rods wide, east and west, said five acre tracts being twenty rods fronting on said street by forty rods deep (east and west), said measurement running from the center of said street, but the above described roadway being reserved for the said use forever.

Signed at Golden, Colorado, this 5th day of December, A. D. 1887.

Wm. G. Smith.

State of Colorado, } ss.
Jefferson County. }

I, Al. Townsend, county clerk in and for said county, hereby certify that Wm. G. Smith, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged the execution of the same to be his free and voluntary act and deed for the uses and purposes therein set forth.

Given under my hand and official seal this 5th day of December, A. D. 1887.

Al. Townsend,
County Clerk.

(Seal of Jefferson County)

Recorded Dec. 5th, 1887, at 3 o'clock p. m., and recorded in book Town Plate 1, page 24.

By various mesne conveyances the plaintiffs in error, plaintiffs below, are the owners of the west half of lots one and two, and the defendants are owners of the east half of said lots. The plaintiffs' portions of these lots abut on Center street.

The plaintiffs claim that their interest should be one-half the lots measured eastward from the side line of the street, while defendants contend that this measurement should be from the center of the street. The conveyances in each case being for "the west half" of the given lot, and for the "east half" of such lot.

The trial court sustained the contention of defendants and fixed the dividing line midway between the center of the street and the east end line of the lots.

There was a further stipulation of the parties as to certain acts and conduct as follows:

"That a survey of said tracts one (1) and two (2) was made by one Charles C. Smith, and a survey was made by Irving B. Williams, as stated in said petition; and that upon said survey there is a dispute as to the location of the line between the west half and the east half of said lots one (1) and two (2), the distance between said surveys being one (1) rod or sixteen and one-half (16½) feet, thereby leaving a strip of land 16½ feet wide and forty (40) rods long between said surveys which the petitioners and respondents, each respectively, claim to own and be entitled to by virtue of the plat and the conveyances as aforesaid. That both of said surveys agree as to the location of the center of said Center street, as to the four (4) corners of said tracts one (1) and two (2), Smith's subdivision. That said Center street has been opened and used by the public for a long time prior to the purchase of the respective interests of these litigants, and is still used as a public highway to

accommodate the owners of tracts further north than tracts one (1) and two (2).

"That some time prior to the purchase by the respondents of the east half of said tracts one (1) and two (2), as alleged in the petition, their grantor, one John Robb, caused a survey of said tracts one (1) and two (2) to be made by one Cawkins in the presence of Henry McDonald, one of the petitioners, and that Cawkins established the division line between the tracts of petitioners and respondents twenty (20) rods east of the center of the said Center street, and at virtually the same place as established and located in April, 1912, by Irving B. Williams, as stated in the petition.

"That thereafter a furrow was ploughed by said Robb and one William Bruce, said furrow or plough line endeavoring to follow the line as established by said Cawkins.

"That said furrow or ditch was in existence at the time respondents purchased the east half of said tracts one (1) and two (2), and that respondents exercised ownership and possession over all the land east of said ditch or plough line until about the 2d day of May, 1911, at which time petitioners secured the services of Charles C. Smith and established a new line sixteen and one-half feet east of the aforesaid ditch line, established by said Cawkins, which practically agrees with the line established by the said Williams. That the petitioners, over the objections of the respondents, established this line and caused a fence to be erected on said line, paying for the material and labor therefor.

"That said fence still stands as marking the boundary between said tracts as established by said Smith on the second day of May, 1911, from said date, said petitioners having been in possession of said strip of land.

That on the 11th day of April, 1912, Irving B. Williams was employed by said respondents and established the line sixteen and one-half (16½) feet west of the said Smith's survey line marked by said fence. That on the 15th day of April respondents served petitioners with a notice to the effect that if petitioners did not willingly join with the respondents in building a fence or moving the old one to the new line established by said Williams, that within three (3) days they would proceed to do so. In consequence of said notice, petitioners proceeded to bring the action herein."

There does not appear to be sufficient in this agreed statement of fact upon which to base an estoppel as to the claims of either party or to throw light upon the matter to be determined.

The plat filed shows the boundary of the several lots to exclude the street. While the east line of the platted tract is a part of the east section line of section 34, yet there is nothing in the record to indicate that this line is upon a highway, or that any part of the east end of the lots in question, is used for highway purposes, as in case of the west end and where two rods therefrom, before the sale of any of the lots by Smith, were so dedicated to the use of the public for highway purposes, being one-half of the width of Center street. What is said in this opinion is with the understanding that no part of the east half of the lots are, or have been dedicated or used for highway purposes.

It will be observed from the agreed statement that Center street is in general use for public purposes.

It has been held to be a general rule, that where land is described in a deed of conveyance according to a certain plat or map, the deed is to be construed in connection with such plat or map for the purpose of identify-

ing the property intended to be conveyed, although this does not exclude other means of identification, not in conflict with the map. *Kretschmer v. Hard,* 18 Colo. 223, 32 Pac. 418.

There is no testimony in this respect offered, other than the statement of Smith filed therewith, and above set out, and such statement is clearly not in conflict with the map, for it declares the street so platted on the map, is reserved to the use of the public forever. It is, however, contended that the last sentence of this statement, "Said measurements running from the center of said street,' but the above described roadway being reserved for the said use forever," is in conflict with the map and fixes the measurement by which the lots are to be conveyed. We cannot agree to this contention for in this sentence is found an additional and specific reservation to the public, of the described and platted roadway or street. But if it be said that this statement is in conflict with the map, then under the authority cited, the map must govern.

This statement clearly shows the intent to dedicate the street to the public, and the map or plat shows the lots to be no part of the street so dedicated. It is reasonable to assume that Smith, in a sale of the lots, did not, and did not intend to sell any part of the street, but only the lot or lots as platted. It is likewise reasonable to assume that the grantees in such cases could have no other or different understanding. We must therefore conclude that when the plaintiffs and their grantors purchased the west half of these lots, the purchase was for such part of the lots as is described by the plat, and did not include one-half of the width of the street.

Counsel for defendants in error cite many authorities in support of the well established principle that a grant or conveyance of land described as bounded by a highway or street will be construed to mean the middle

of such highway or street unless such construction is contradicted either expressly or by necessary implication. But they overlook the fact in this case, that the tracts are not so described and the further fact that such construction is at least contradicted by necessary implication. The description is for one-half of the lot, described only by number.

The reason for the rule of law just stated is that the adjacent proprietor is *prima facie* owner of the soil, subject to the easement in favor of the public, and this upon the presumption that the ground was originally taken from the adjoining owners, and for the sole purpose of being used as a thoroughfare.

The rule is, however, qualified by the exception that where the title to a street is in the government or municipality, a deed of land bounded by such street will carry title only to the line and not to the center of the street; and where the grantor is a corporation, holding a street for public purpose and disposing of the adjacent lots for private use, the boundary of the private property by that held for public purposes will be the dividing line between the two, the same as when one lot is bounded by another. 5 Cyc. 907. So that in this case, whether the title to the street by the dedication was in the county, or whether it was "reserved forever" for public purposes, it was clearly not conveyed by the deeds of Smith.

By section 7221 Mills' Ann. Stat. 1912, it is provided:

"Whenever any street or alley designated on the plat of any city or town, or any lands laid out as the site of any city, town or village, or addition to, or subdivision of any municipal corporation or any tract of land laid out in lots or blocks and whether the same be within the limits of any municipal corporation or not shall be

vacated, the fee of the lands included within such street or alley, or so much thereof as may be vacated, and all right, title or interest of the state or the inhabitants thereof, or of such municipal corporation, shall be deemed and taken to vest in the proprietors of the abutting lots, and parts of lots, each abutting owner taking to the center of the street or alley or to the extent that the street or alley may be vacated.''

Under this statute there can be no question but that when the street so platted in this case shall be vacated, if such vacation shall ever occur, then the title to the land occupied thereby shall be vested in the abutting owners and not in the original grantor.

It does not necessarily follow that in case of a sale of the half of a lot abutting on the street prior to the time such vacation is made or contemplated, measurement thereof should be made from the center of the street.

The right of reversion is solely a contingent one, based upon the happening of the vacation of the street, and until the fact of vacation occurs, the abutting owner can have no title to any part of the street. Until such time the use and title is in or reserved to the public.

It would be, therefore, manifestly unjust to say in a case of the equal division of a lot, one end of which abuts on the street, that the one who purchased such abutting and shall be held to include as a part of his moiety, that portion of the street which may or may not fall to him, dependent solely upon the vacation of the street; while the one purchasing that half not so abutting, should have title with exclusive private use and occupancy to an amount of land greater and to the extent of one-half of that part of the street than may fall to the abutting owner in case of vacation.

This view is sustained by the very similar case of *Fraser v. Ott,* 95 Cal. 661, 30 Pac. 793. In the case of *Burbach v. Schweinler,* 56 Wis. 386, 14 N. W. 449, it is said:

"By the description of the premises according to the plat, the alley which appears thereon, and which may fall within the metes and bounds of the premises described, is necessarily excluded from the grant and the covenants of the deeds, and it would make no difference whether by the law at the time the plat was made, the alley was a mere public easement, or the fee-simple title to the land was vested in the county or any other body or person for the public. Whatever the alley was by the plat, *that* is excluded."

In the case of *Wetmore v. Story,* 22 Barb. N. Y. 486, an injunction was asked by the owners of certain lots to enjoin the construction of railway tracks in the street upon which such lots abutted, and the right to maintain such private action was based on the claim of title to the land occupied by the street to the center thereof, by reason of the ownership of the lots in question. Upon this point the court said:

"In cities, the pristine or (if there be any such) the existing owners of the strata of the streets cannot exercise any acts of possession, for their individual benefit, over the devoted soil. The many uses to which it may be appropriated preclude that. They have not, therefore, any possession which can raise a presumption of title."

The judgment is reversed with instruction to the court to establish a boundary line as between the plaintiffs and defendants, midway between the east and west boundaries of lots one and two, and exclusive of the street.

Musser, C. J., and Garrigues, J., concurring.