## No. 11,291.

### Skerritt Investment Co. *v.* City of Englewood, et al.

#### Decided July 6, 1926.

Action to quiet title.   Judgment for defendants.

*Affirmed.*

1. 'Dedication—*Effect.*   After heirs obtained authority of court to dedicate a lot to the public for a highway, neither the heirs nor their grantee could take an inconsistent attitude.

2. *Estoppel.*   Where owners dedicated land to the public as a highway, their grantee might not object to a vacation of the highway in a suit to quiet title, on the ground that the city had no power in the premises.

3. Words and Phrases—*"To."*   The word "to" is usually a term of exclusion, unless by necessary implication it is used in a different sense.

4. Deeds—*Construction.*   Deed excepting lots "46 to 50," held to except lot 50, in view of a previous deed dedicating the lot to public use.

5. *Vacation of Street—Abutting Owner.*   Recitation in a deed that if a street should be vacated grantee should have the right to purchase certain adjoining property, held not to overcome the presumption that he took title to the center of the street upon its vacation.

6. *Construction.*   A recital in a deed, which is repugnant to the previous language of an express unrestricted grant, is void.

7. Municipal Corporations—*Vacation of Street—Abutting Owners.*   When a street is vacated, the abutting owners take to the center of the street, under section 9073, C. L. '21.

8. Deeds—*Construction.*   In determining what property passes by deed, the court must take, into consideration all of its language.

*Error to the District Court of Arapahoe County, Hon. S. W. Johnson, Judge.*

Mr. James J. Sullivan, for plaintiff in error.

MR. LUKE J. KAVANAUGH, for defendants in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THIS action is by the Skerritt Investment Company, a corporation, against the city of Englewood and William Beitenman to quiet in the plaintiff its title to different lots or tracts of land situate in the city, in some of which it is alleged the city, and in one tract that Beitenman, claim to be interested. The only defendant who appeared is Beitenman, whose answer contained a traverse of the complaint and a counterclaim in which he asked to have quieted in him the title of a triangular piece of land, included in the complaint, designated on a recorded plat as lot 50 in block 1 of Shady Side addition to the city of Englewood. The decree of the trial court granted the requested relief as against the city, but quieted in Beitenman title to lot 50. The Investment Company is here with its writ of error to review that part of the adverse decree affecting lot 50.

Running diagonally through the City of Englewood in a northwesterly and southeasterly course there was a highway called Hampden or Sheridan avenue, indifferent names for the same highway. Apparently there was no statutory dedication of the highway when it was first opened up or used, which was more than fifty years ago, but it is not important here whether the highway originally was the result of a common law or of a statutory dedication by the owner of the land on which it ran. For it was being constantly traveled and used as such for many years before the city of Englewood was in existence and after that municipality was incorporated it was traveled, and considered by the city, as one of its streets until a portion of it was vacated and abandoned as such,

as will be presently mentioned. The land involved in this action was a part of a larger tract owned by Mary Skerritt upon whose death title was vested in her lawful heirs. After Thomas Skerritt, her son and one of the heirs at law, was appointed as administrator of the estate of his mother, he subdivided a portion of her lands into blocks and lots under the name of Shady Side addition to the city of Englewood, and made a plat thereof which he filed in the office of the county recorder. The controversy now before us is as to the ownership of what is designated on this plat as lot 50 of block 1, which is bounded by Broadway on the east, the city ditch on the south, South Acoma street on the west and Hampden avenue on the north. The administrator had not first obtained permission of the county court in which the estate was being probated to make this addition. Thereafter on May 5, 1910, he filed in the county court his petition setting forth the fact that he had previously and without permission of the court subdivided and platted the land in question and asked for an order of the court confirming and ratifying his previous acts therein. In this petition the administrator stated that fractional lot No. 50 in block 1 of the addition was of no value or practical use to the estate; that it had already interfered, and would seriously interfere, with the development of the estate and the immediate sale of lots No. 49 and 48 in the same block adjoining it on the south. Petitioner further alleged that this lot is a small fractional triangular piece adjoining Hampden avenue, and for that reason it should be made a part of the avenue, being best suited for that purpose, and good for no other, and that the best interest of the estate will be conserved by dedicating the same to the county of Arapahoe for road purposes, the same to constitute a part of Hampden avenue, and the administrator in the petition purported expressly to make such dedication. He signed the petition as administrator and as an heir. The other heirs of the estate

who, together with the administrator, are the sole grantors to the defendant Beitenman of lots 48 and 49, as will hereinafter be referred to, joined with the administrator in the petition and asked the court to grant the prayer thereof, which the court did on the same day by entering an order expressly authorizing and empowering the petitioner to dedicate fractional lot 50 for the purposes of a roadway and to make it a part of Hampden avenue and thereby confirmed petitioner's previous acts. Thereupon the proper instruments of dedication were filed with the county recorder. That section of Hampden avenue which ran diagonally through the city, including the part lying to the north of and contiguous to the addition, was at some time after the incorporation of the city swung northward and made to run due east and west, and thereafter that part of the former Hampden avenue immediately north of and adjoining lot 50 was abandoned and no longer used as a highway. Following the entry of the above mentioned order of the county court, and about one month later, all of the Skerritt heirs, being the same persons who instituted the dedication proceeding in the county court or authorized and requested its filing, conveyed by warranty deed to the defendant, Beitenman, for $1,500, lots 49 and 48, lying immediately to the south of and adjoining fractional lot 50. After Beitenman bought these lots he erected a building thereon fronting north, as he supposed on Hampden avenue, built a sidewalk across what was former lot 50, which from that time forward was used by the public as a sidewalk. The building on the premises has been occupied by a drug store and other mercantile establishments. Under the foregoing state of facts we think the district court was right and that its judgment must be affirmed for the following reasons:

1. Shady Side addition was carved out of a larger tract of land which was a part of the estate of Mary Skerritt, deceased. Upon her death all of her property became vested in her heirs. The title to Shady Side ad-

dition thus passed to them. These heirs gave a warranty deed to the plaintiff corporation which purported to convey to it, among other lands, all of Shady Side addition, "excepting lots 46 to 50, block 1." If the plaintiff did not, by this deed, acquire title to lot 50 in block 1, it is not in a position to maintain this action or to question the title which the trial court by its decree confirmed in the defendant, Beitenman.

2. If, however, the deed from the heirs to plaintiff corporation did purport to convey lot 50, nevertheless the plaintiff is estopped in equity to question the title of the defendant.

Taking up these two propositions in inverse order we observe first that the Skerritt heirs, by whose acts the plaintiff corporation is bound, expressly requested the county court to authorize them to dedicate, and upon its order they did, dedicate lot 50, and had it added to and included in Hampden avenue, and represented in their petition for such authority that lot 50, in the circumstances, was of no value to the estate and asked for and obtained authority to confirm their previous unauthorized acts of dedication, as that would facilitate the sale of lots 48 and 49. Having thus obtained authority of the court to dedicate lot 50 and make it thereby a part of Hampden avenue, and having thereafter sold to the defendant lots 48 and 49 upon the representation that lot 50 had theretofore been dedicated by them to the public, neither the Skerritt heirs nor their grantee, plaintiff corporation, may afterwards be permitted to take an inconsistent attitude. We repeat that it is immaterial whether the dedication was a statutory, or a common law, dedication, for the result is the same in either case so far as concerns this controversy. If there was a statutory dedication, it operates as a grant. If it was a common law dedication, it operates as an estoppel against those who made it. In either event the highway in question, including all additions thereto, was first the

highway of the county and afterwards of the city of Englewood. Neither the city nor county is here making any claim to this lot. If the city had no power in the premises, and if the title of the highway was in the county of Arapahoe, the plaintiff may not now avail itself of its supposed right to object to the vacation of either the highway as such, or of lot 50 as a part thereof. Equity will not sanction such inequitable conduct as the plaintiff seeks to have ratified by the courts.

As to the first proposition it is to be observed that the plaintiff's right to maintain the action at all depends upon whether or not it received by virtue of its warranty deed from the Skerritt heirs any right or title to lot 50. By that deed all of the Shady Side addition ''excepting lots 46 to 50, block 1'' were conveyed to the plaintiff. ''Lots 46 to 50,'' whatever the phrase means, were not conveyed to the plaintiff. Lots ''48 and 49'' were expressly conveyed by plaintiff's predecessors in title to the defendant, and the plaintiff corporation never had any right or title to either of them. The general rule is that the word ''to'' is usually a term of exclusion, unless by necessary implication it is used in a different sense. Bouvier's Law Dictionary, vol. 3 (Rawle's 3d Revision), p. 3283. But it is not always used in an exclusive sense. We think that in this deed, under the surrounding facts, lots ''46 to 50,'' block 1, both inclusive, did not pass to the plaintiff. The sense in which ''to'' was used must be determined by the subject matter and the pertinent facts which existed at the time plaintiff received its deed. Unquestionably lots 48 and 49 did not pass to the plaintiff. There could have been no intention on the part of the Skerritt heirs to include lot 50 in their deed to plaintiff because previously they had by deed duly recorded dedicated lot 50 to the county of Arapahoe as a highway and asked that it be made a part of Sheridan avenue, and must have known of their previous acts when they conveyed to Beitenman. And so when they conveyed

Shady Side addition "excepting lots 46 to 50, block 1,"
they intended to include within the exception, lot 50, be-
cause at that time they did not own it, having previously
dedicated it to the public. We, therefore, hold that
plaintiff never became the owner of fractional lot 50.
A few leading cases will we think support our conclusion.
In *Stough v. Reeves,* 42 Colo. 432, 95 Pac. 958, it was held
that the description in a notice of sale for taxes of cer-
tain property as lots "1 to 24" does not exclude lot 24 by
reason of the use of the word "to," as such word is not
necessarily a term of exclusion, but one whose meaning is
to be ascertained by the reason and sense in which it is
used. The court there held that lot 24 was included.
While this case did not construe the language of a deed,
but a notice of sale for taxes of property on which the
tax had not been paid, we think in principle it is appli-
cable to the case in hand. In *Central of Georgia Ry. Co.
v. Union Springs & Northern Ry. Co.,* 144 Ala. 639, 39 So.
473, 2 L. R. A. (N. S.) 144, it was held that a railroad
organized to run from a certain designated town to an-
other designated town does not mean that it shall stop
at the corporate limits of the latter, but may build into
the latter. In *Houghton County Street-Railway Co. v.
Common Council of Village of Laurium,* 135 Michigan
614, 98 N. W. 393, it was said that a street-railway, which
contracted by an ordinance to run all of its cars without
change to the village of Laurium, was required to run
trains not merely up to the boundaries of the city but to
places within the city. In *Penn Placer Mining Company
v. Schreiner, et al.,* 14 Mont. 121, 35 Pac. 878, the decision
was that when the time for filing of a motion or pleading
or doing any act of court practice, is extended "to" a
certain date, the date named is included within the peri-
od prescribed. To the same effect is *State of Washing-
ton v. Benson,* 21 Wash. 365, 58 Pac. 217. In the cele-
brated case of *Union Pacific Railroad Co. v. Hall, et al.,*
91 U. S. 343, 23 L. Ed. 428, which fixed the eastern ter-

minus of the Union Pacific Railroad at Council Bluffs instead of Omaha, the court recognized and applied the doctrine that ''from,'' ''to'' and ''at'' are to be taken inclusively according to the subject matter.    See also *Kendall v. Kingsley,* 120 Mass. 94, and *Hazlehurst v. Freeman,* 52 Ga. 244, to the same effect.  Since we have concluded that plaintiff's deed, under which it seeks to maintain this action, does not include lot 50, it follows that plaintiff, not being its owner or in possession of it at the time of the vacation of Hampden avenue, cannot maintain this action to assert its claim to the ownership of the vacated portion thereof, on the ground that the same was vested in it as the owner of the adjoining lot, because the defendant, as the owner of lots 49 and 48, adjoining that portion of the vacated highway, became vested therewith under our statute.

Plaintiff, however, contends that the only claim the defendant may assert to any part of lot 50 must be founded on the rule that when land abuts on a street or highway it is presumed that the grantor intended by his deed thereof to convey to the center of such street or highway.  Plaintiff moreover concedes that were there nothing in the deed by the Skerritt heirs to the defendant, Beitenman, to overcome this presumption, Beitenman would have acquired title under our statute to one half of Hampden avenue, including lot 50; but its counsel argues that this presumption is overcome by the recital in the deed to the defendant, which reads: ''That in the event said street north of the lots hereby conveyed (lots 48 and 49) and now known as Sheridan avenue, should for any reason be vacated, or cease to be used as a public street, then the party of the second part (defendant Beitenman) shall have the refusal of purchasing a strip fifty feet in width on the north of the property hereby conveyed at the then market value thereof, which value shall be fixed by any court of competent jurisdiction.''   This language does not overcome

the presumption that the grantee, Beitenman, took title to the center of the vacated street. Why this recital was inserted, we do not know; possibly it was because the grantors imagined that as their ancestor was the original owner of the lands on both sides of Hampden avenue at the time it was laid out, they, as such heirs, would get title to the highway, if it was vacated, even though they had parted with title to the land adjoining the highway. But their supposition is not controlling. The language is not a reservation or an exception. The recital seems to be repugnant to the previous language of an express unrestricted grant. If so, it is void. We think it amounts to a mere naked option and imposes no obligation whatever upon the grantee, Beitenman, to whom the option was given. It gives to him, upon an uncertain contingency, merely an option to buy something which the plaintiff does not own. He may entirely disregard it, and if he does, no action lies for his failure to take it up. But more important is the fact that the Skerritt heirs had no title to lot 50 which they could convey, and we have already said that it could not have been their intention to include lot 50 in their deed to the plaintiff corporation because they had previously dedicated the same to the county as a part of Hampden avenue. When this avenue was vacated, lot 50 being a part thereof, it vested in the proprietor of the abutting premises, such abutting owner taking to the center of the street. Section 9073, C. L. 1921; *Olin v. D. & R. G. Ry. Co.,* 25 Colo. 177, 53 Pac. 454. Beitenman, being the owner of lot 49 abutting the street on the south, took to the center of the street which includes lot 50. The grantors in the Beitenman deed, plaintiff's predecessor in title, had at the time of the conveyance no interest in lot 50. It was then a part of Hampden avenue. As further throwing light upon, and justifying, our conclusion, this deed of plaintiff's predecessor in title to Beitenman described lots 48 and 49 as "being 50 feet on Broadway by 125 feet on Sheridan avenue in the town of Englewood." If they

fronted on the avenue there could be no lot 50 between them and the avenue. In determining what property passed by the deed, we must take into consideration all of its language. If lot 50 was not a part of former Hampden avenue, lots 48 and 49, (the premises conveyed) could not be 125 feet on that avenue. Indeed lots 48 and 49 would not abut upon Sheridan avenue at all.

The judgment must be, and it is, affirmed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE SHEAFOR concur.