## No. 19,172.

JOHN J. MORRISSEY *v.* BENJAMIN F. ACHZIGER, ET AL.
(364 P. [2d] 187)

Decided August 21, 1961.

Mr. WILLIAM H. SCOFIELD, Mr. CHARLES A. MURDOCK, for plaintiff in error.

Miss COLLEEN G. VAN NOCKER, for defendants in error.

*En Banc.*

Mr. Chief Justice Hall delivered the opinion of the Court.

The parties appear here in reverse order to their appearance in the trial court. Herein we refer to defendants in error as plaintiffs and to the plaintiff in error as defendant or Morrissey.

On February 21, 1958, plaintiffs filed their complaint in which they named Morrissey and other named persons as defendants; also named as defendants were the State of Colorado, and all unknown persons who might claim any interest in the property described in the complaint as amended, specifically:

"½ of the vacated street known as Artic [Arctic] Place adjacent to and contiguous to Lots 7-10, inclusive Block 16, Chamberlin's University Terrace East, Budlong's Resubdivision."

The complaint is in usual form — alleges that plaintiffs are the owners of and in possession of the property described; that some one or more or all of the defendants claim some interest in the property and that any such claims are without foundation or right.

Plaintiffs pray that the defendants be required to appear and set forth the nature of their claims, if any, and that it be decreed that the plaintiffs are the owners of the property in fee simple and that their title thereto be quieted.

Only the defendant Morrissey appeared. Default was entered against the other defendants.

Morrissey filed an answer in which he put in issue plaintiffs' allegation of ownership and possession. He also filed a cross-complaint against the plaintiffs and the named defendants, except the State of Colorado, wherein he alleges that he owns the lands involved, having previously acquired said land together with Lots 6-10, Block 16, Chamberlin's University Terrace East, Budlong's Re-

subdivision, by warranty deed from Sarah Burns, one of the named defendants, and that due to mutual mistake the property described in plaintiff's complaint was omitted from said deed. He prayed that said deed be reformed to include said property and that he be decreed the owner thereof.

There is nothing in the record to indicate that the defendant Sarah Burns, against whom Morrissey sought reformation, was ever served with process or notice requiring her to defend against this cross-complaint seeking reformation.

Upon trial to the court it appears from the record that the plaintiffs offered as proof of their ownership a warranty deed dated June 29, 1956, whereby defendant Morrissey conveyed to plaintiffs:

"Lots Six (6), Seven (7), Eight (8), Nine (9) and Ten (10), Block Sixteen (16), Budlongs Resubdivision of Chamberlin's University Terrace East."

That is the only paper title on which plaintiffs seek to be decreed the owners of the property described in the complaint.

The record is clear that from 1887 until July 8, 1937, Arctic Place and Budlong's Resubdivision of Block 16, Chamberlin's University Terrace East was a part of Arapahoe County and not within the confines of any city or town; that on July 8, 1937, Arctic Place was vacated and at that time one Stella Kate Cullen was the owner of the aforesaid Lots 6-10, Block 16.

The record further discloses that on December 17, 1946, Sarah Burns, successor in interest to Stella Kate Cullen, by warranty deed conveyed to the defendant Morrissey said Lots 6-10, Block 16.

From the record before us it appears without question that the warranty deed from Morrissey to plaintiffs expresses the true intent of the parties thereto at the time of the execution and delivery thereof. Neither party seeks reformation or even suggests that reformation

might be proper. In that state of the record the trial court found:

"That the defendant John J. Morrissey was the record owner of the property hereinafter described [one-half vacated street known as Arctic Place adjacent to and contiguous to Lots 7-10, inclusive, Block 16, Chamberlin's University Terrace East, Budlong's Resubdivision] and was owner of said property to the 29th day of June, 1956, on which date he conveyed *his* title thereto to the plaintiff." (Emphasis supplied.)

He further found that all of the allegations of Morrissey's cross-complaint "adverse to and inconsistent with plaintiff's complaint are untrue."

He decreed that plaintiffs were the owners of the lands involved and quieted plaintiffs' title thereto. He made no express disposition of Morrissey's cross-complaint.

Morrissey is here by writ of error seeking reversal with directions to the trial court to enter its decree granting him the relief prayed for in his cross-complaint, namely (1) reformation of his deed from Sarah Burns to include the property which is the subject matter of this action, and (2) a decree quieting title to said tract in Morrissey.

█ In an action seeking to quiet title the plaintiff must rely on the strength of his own title rather than on the weakness in or lack of title in defendants. See *Fastenau v. Engel*, 129 Colo. 440, 270 P. (2d) 1019, and numerous cases cited therein.

Without discussing the question as to who owns what in dedicated streets, alleys or roadways prior to vacation, there can be no dispute that upon vacation the owners of property abutting thereon take and become the fee owners of that portion abutting their property and to the center line of the vacated area.

Thus it appears that Stella Kate Cullen, prior to July 8, 1937, was the owner of Lots 7-10, Block 16, abutting on Arctic Drive. After July 8, 1937, she owned (1) said

Lots 7-10, Block 16, and (2) a rectangular area 20′ x 91′ contiguous to and south of said Lots 7-10, Block 16 (this is the property described in plaintiffs' complaint).

▮ To say, as did the trial court here, that a deed drawn subsequent to the vacation of the street which describes Lots 7-10, Block 16, and nothing more, and so drawn as to express the true intention of the parties, serves to divest the grantor of a tract 20′ x 91′, no part of which is included in the area described in the deed, does not have the sanction of this court. Certainly a person owning contiguous tracts of land can convey one without conveying the other. A deed which accurately and correctly describes a tract of land is not subject to construction or interpretation. If the description does not express the intention of the parties, reformation is the proper remedy. To hold · otherwise would create chaos and add a new and frightening chapter to the law of conveyancing.

Contrary to the finding of the trial court, we find nothing in the record to support a finding that either Morrissey or plaintiffs were ever the *record owners* of the property involved.

▮ The trial court made no disposition of Morrissey's claim for reformation of his deed from Sarah Burns and was in no position to so do for the reason that Sarah Burns, though a defendant in a quiet title action, was never made a party to or notified of the fact that a co-defendant was seeking relief in the nature of reformation of her *warranty deed* by adding thereto lands not described therein, thus making her answerable for new and additional liabilities under her warranty of title. Sarah Burns was in default as to the claim asserted by Achziger — she was not in default as to the claim of Morrissey for reformation. She had never been served with notice of this second demand, and the court was without jurisdiction to enter a valid judgment for reformation. Rule 54, Colo. R.C.P.

The judgment is reversed and the cause remanded to the trial court with directions to enter an order dismissing plaintiffs' complaint with prejudice, and a further order dismissing with prejudice Morrissey's cross-complaint against the plaintiffs, and dismissing *without prejudice* Morrissey's cross-complaint against Sarah Burns; with the further order that the parties each pay their own costs incurred in this court and the trial court.

MR. JUSTICE DAY, MR. JUSTICE DOYLE and MR. JUSTICE McWILLIAMS dissent.

MR. JUSTICE DOYLE dissenting:

I respectfully dissent! In doing so I shall restate the facts which appeared in my original majority opinion which has now been relegated. I consider this fact statement necessary because a change of emphasis in the new majority opinion stresses only those happenings which occurred after the street in question was vacated.

Chamberlin's University Terrace East was platted April 5, 1887. Thereafter, on September 15, 1893, the owner of Block 16 resubdivided as Budlong's Resubdivision of Block 16, Chamberlin's University Terrace East. Both plats dedicated to the public perpetual rights over the streets and alleys. On July 12, 1937, the County Commissioners of Arapahoe County approved the vacation of Arctic Place by the owner of the adjacent lots. Stella Kate Cullen was then owner of lots 6 to 10 and joined in vacating Arctic Place. Thereafter she died, leaving her property to Sarah Burns who conveyed the lots involved with no mention of the vacated streets to the defendant. On May 5, 1956, defendant entered into a contract whereby he agreed to sell the lots in question, together with one-half of the vacated street, to Richard A. Hyde. This contract was later cancelled and on June 16, 1956, the property was sold to the plaintiffs, no mention being made of the vacated street. The sale price was

less than the amount provided in the prior contract with Hyde. The contract with plaintiffs was consummated, the deeds making no mention of the vacated area. Plaintiffs did not see the map until after the deed was delivered, although there is testimony that the broker had some recollection of showing the map to plaintiffs and of telling them that the vacated area could not be delivered. A plat was introduced in evidence which did not show that the street in question had been vacated.

Plaintiffs stipulated that Morrissey had title to the vacated Arctic Place at the time of the conveyance to them. The trial court ruled that the deed to the plaintiffs conveyed the vacated street area inasmuch as the grantor had not reserved it. The judge reasoned that the vacated area of Arctic Place attached to the adjacent lots and was transferred to the plaintiffs in the absence of a specific reservation by the grantor. The defendant contends that the vacated area was not effectively conveyed by the deed which merely described the lots and that the extrinsic evidence introduced shows indisputably the grantor's belief that he did not own the land and that it was not his intention to convey it. Defendant relies on real estate standard No. 4 adopted by the Colorado Bar Association to the effect that a vacated street must be described in order to be conveyed.

The question thus presented is whether following the vacation of a dedicated street in a territory outside a city the vacated area must be described specifically and separately from adjacent lots, or whether a conveyance of land by reference to a plat describing the area by lot and block numbers carries with it adjacent vacated land without specific description.

The majority concedes that after the vacation of Arctic Place, Stella Kate Cullen owned the adjacent vacated area. Inquiry as to how this came about is deemed by the majority to be unnecessary to the present study. This is an entirely understandable attitude considering

that the pre-vacation status lends force to the conclusion that the adjacent portion of land devoted to the street attached to the platted lots without being described. Consideration of the condition of the title to the adjacent street is therefore a highly cogent part of this dissent.

The statutes are inconclusive. C.R.S. '53, 139-1-7, provides that dedicated streets and alleys within a city or town are the property of the city in fee. Notwithstanding this we have held that the sub-surface area of a street within a city is owned by the adjacent owner. *City of Leadville v. Bohn Mining Co.,* 37 Colo. 248, 86 Pac. 1038. No similar or counterpart statute vests title to streets and alleys in the county where the land is located outside a city. Silence of the statute as to ownership of adjacent dedicated streets renders common law rules applicable. It is universally held (in the absence of statute) that the owner of land adjacent to a street or alley owns to the center of the street in fee, subject only to the rights of the public to the use of the street, and that this interest passes without specific description. The rule is well expressed in 25 Am. Jur. 426, Highways, sec. 132:

"In the absence of a statute expressly providing for the acquisition of the fee, or of a deed from the owner expressly conveying the fee, when a highway is established by dedication or prescription, or by the direct action of the public authorities, the public acquires merely an easement of passage, the fee title remaining in the landowner."

This rule has not only general acceptance, it is also observed in Colorado. *Olin v. Denver and Rio Grande Railroad Co.,* 25 Colo. 177, 53 Pac. 454; *Overland Machinery Co. v. Alpenfels,* 30 Colo. 163, 69 Pac. 574; *Skerritt Investment Co. v. City of Englewood,* 79 Colo. 645, 248 Pac. 6; *McDonald v. Kummer,* 56 Colo. 153, 137 Pac. 51. See also 1 Elliott, *Roads and Streets,* sec. 125 (3d ed. 1911); 1 Williams, *Vendor and Purchaser* 400 (3d ed. 1922); 49 A.L.R. (2d) 982. These authorities declare a

presumption that the owner intended to convey the most valuable estate owned, consequently a conveyance of abutting lots carries with it title to the middle of the adjoining dedicated road.

Since the adjacent owner (outside the city) has a fee interest in the dedicated street to the center thereof which interest is transferred by merely describing his lots or tract and without specifically referring to the adjacent street, what change is effected by vacation which requires that it be mentioned in a conveyance? The answer is that no change in the ownership or in vesting occurs as a result of the vacation of the strip. Can it be said then that some spontaneous cleavage process attends vacation so that as result thereof we suddenly and unexpectedly have two tracts of land where we formerly had but one? The single legal consequence of vacating a street outside the city is the merger of the right of immediate and exclusive possession with the fee which is already vested in the adjacent owner. This is not a change which demands that the vacated portion shall henceforth be described specifically at the risk of being retained by the grantor.

We are not told why this result must obtain. We are merely directed that it is so. Nor are we cited to any authorities, reasoned or otherwise, which so hold. Instead we are warned that "To hold otherwise would create chaos and add a new and frightening chapter to the law of conveyancing." I submit that a rule which has a settling rather than an unsettling effect on titles is not apt to create chaos. A rule which prevents properties from being disjointed and which is designed to obviate the existence of unusable rectangles of property which could only serve to haunt adjacent owners is not going to create chaos. In fact, I do not contend that the rule of the majority will bring about any dire consequences. It will merely cause annoyance and it may require owners to buy property which they supposed they owned.

In what respect is the proposed rule frightening? Is it because it is "new"? Is the implication that we must forever cling to that which is old — that we must carefully shun innovation and change lest we pull down upon our heads "chaos"? This "dire consequence" argument is not unfamiliar in the law, but it should only be resorted to in extreme emergency and such a condition is not here present. Note, however, that the proposed principle is neither new nor chaotic. The cases holding that vacation does not operate to create separate tracts are collected in 49 A.L.R. (2d) in a note at pp. 982, 1003. The author says that the later cases presume that the conveyance after vacation carries to the center of the highway in the absence of an intent to reserve the vacated portion. The Kansas case of *Rothwell v. Veail,* 129 Kan. 679, 284 Pac. 359, discusses the question and points out the illogic of the rule which would create distinct tracts following vacation. See also *Anderson v. Citizens Savings & Trust Co.,* 185 Cal. 386, 197 Pac. 113; *Pinsky v. Sloat,* 130 Cal. App. (2d) 579, 279 P. (2d) 584; *Greenberg v. L. I. Snodgrass Co.,* 161 Ohio St. 351, 119 N.E. (2d) 292; *Askins v. British-American Oil Producing Co.,* 201 Okla. 209, 203 P. (2d) 877. That this non-separation doctrine promotes stability of title is explained in the language of Mr. Justice Taft in *Paine v. Consumers' Forwarding & Storage Co.,* 71 Fed. 626 (6th Cir. 1895) as follows:

"The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots."

A fully considered discussion is contained in the case noted in 49 A.L.R. (2d), of *Greenberg v. L. I. Snodgrass,* supra, wherein the Court reasoned from the premise that

a pre-vacation conveyance extends to the center of the street to the conclusion that since the vacation affects no change in the ownership, the presumption is not changed and thus the tract in its entirety continues. This reasoning is summed up by the Ohio Court as follows:

"Since the owner of land abutting on a street has a title which extends to the center line of such street, since where he conveys his land to another, he conveys the title thereto to the center of the street, and since, if such street is vacated, it accretes to the abutting-lot owners, subject only to such rights as other such owners may have in the street as the necessary means of access to their property, we hold that, where the owner of a lot abutting on a street, which street is vacated during his ownership, conveys such lot by number and without reservation of any rights in the street, such conveyance transfers, in addition to the lot, all rights which the grantor may have acquired by reason of such vacation, even though the metes and bounds description in the conveyance extends only to the side of the street."

The fact that the tract was at all times a singly described one before vacation and that its essential character remains unchanged after the vacation, persuades me that the vacation event does not change its essential character. It does not effect a separation into two tracts. That being so, specific description of the portion of vacated street is not necessary to a conveyance thereof. Applied to the present case, the conveyance from Burns to Morrissey effectively transferred the vacated street and the deed from Morrissey to the plaintiffs had the identical effect.

I shall make one further comment in concluding these remarks: Proof that the rule of the majority has a disturbing rather than a stabilizing effect on titles appears in this case. Under the majority decree the title to this embattled rectangle of land is not in either of the contending parties. Instead it is held by the heir or heirs of Stella Kate Cullen. It may well be too late for Morrissey

to start a new reformation action. Thus the consequence mentioned, that is, unintentional retention of disassociated, unusable units of land is clear.

It is for these reasons that I disagree with the majority.

MR. JUSTICE DAY and MR. JUSTICE McWILLIAMS join in this dissent.