Rodney and Linda **ASMUSSEN**, Husband and Wife, For Themselves and As Representatives of a Class of Similarly Situated Persons, Plaintiffs,

v.

**UNITED STATES, Defendant.**

No. 09–129L.

United States Court of Federal Claims.

March 23, 2012.

Thomas Scott Stewart, Baker Sterchi Cowden & Rice, L.L.C., Kansas City, MO, for the plaintiffs. With him were Elizabeth McCulley, Brent Baldwin, Steven M. Wald, and J. Robert Sears, Baker Sterchi Cowden & Rice, L.L.C., of counsel.

Jessica Michelle Held, Trial Attorney, Natural Resources Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for the defendant. With her was Ignacia S. Moreno, Assistant Attorney General, Environment and Natural Resources Division.

## ORDER

MARIAN BLANK HORN, Judge.

In this Rails to Trails class action involving 120 plaintiffs, filed pursuant to the Fifth Amendment to the United States Constitution, the defendant, the United States, has drafted a question for the court to certify to the Colorado Supreme Court regarding an issue of state law, pursuant to Colorado Appellate Rule 21.1 (2012). Both parties agree that Colorado law controls. The parties disagree, however, whether under Colorado law the centerline presumption is applicable to an abandoned railroad right of way easement. Neither party is able to cite to clear Colorado precedent to resolve the issue before the court, nor has this court identified such guidance. Nonetheless, plaintiffs oppose certification. Plaintiffs argued that Colorado law is clear, that the centerline presumption "absolutely applies" to their claims and further urge that the length of time involved in certification should cause the Court of Federal Claims to proceed to issue a decision on the matter. Plaintiffs stated: "because the law is clear, if this Court [the United States Court of Federal Claims] certifies this issue, delay will ensue while the Colorado Supreme Court considers, and likely rejects certification." Plaintiffs also argued that Colorado cases applying the centerline presumption to public highways is clearly precedential on the issue and can be applied to abandoned railroad rights of way. Although recognizing that no Colorado precedent on the issue exists, plaintiffs urged this Federal Court to decide the issue, rather than refer the issue of state law back to the state Supreme Court for guidance in an uncharted area.

Colorado Appellate Rule 21.1 provides:

Certification of Questions of Law:

(a) Power to Answer. The Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court, or United States Court of Claims, when requested by the certifying court, if there is involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court.

(b) Method of Invoking. This Rule may be invoked by an order of any of the courts referred to in section (a) upon said court's own motion or upon the motion of any party to the cause.

(c) Contents of Certification Order. A certification order shall set forth:

(1) The question of law to be answered; and

(2) A statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose.

(d) Preparation of Certification Order. The certification order shall be prepared by the certifying court, signed by the judge presiding at the hearing, and forwarded to the Supreme Court by the clerk of the certifying court under its official seal. The Supreme Court may require the original or copies of all or of any portion of the record before the certifying court to be filed under the certification order, if, in the opinion of the Supreme Court, the record or portion thereof may be necessary in answering the questions.

(e) Costs of Certification. Fees and costs shall be the same as in civil appeals docketed before the Supreme Court and shall be equally divided between the parties unless otherwise ordered by the certifying court in its order of certification.

(f) Briefs and Argument. Upon the agreement of the Supreme Court to answer the questions certified to it, notice shall be given to all parties. The plaintiff in the trial court, or the appealing party in the appellate court shall file his opening brief within 35 days from the date of receipt of the notice, and the opposing parties shall file an answer brief within 35 days from service upon him of copies of the opening brief. A reply brief may be filed within 21 days of the service of the answer brief. Briefs shall be in the manner and form of briefs as provided in C.A.R. 28. Oral arguments shall be as provided in C.A.R. 34.

(g) Opinion. The written opinion of the Supreme Court stating the law governing the questions certified shall be sent by the clerk under the seal of the Supreme Court to the certifying court and to the parties.

Colo.App. R. 21.1.

■ The applicable Colorado Appellate Rule 21.1 states that the United States Court of Claims may certify questions, but does not specifically mention the United States Court of Federal Claims. The Uniform Certification of Questions of Law Act lists the effective date of Colorado's Appellate Rule 21.1 governing certification as April 1, 1970, with no apparent amendments. This date precedes the reformulation of the National Courts from the United States Court of Claims to the establishment of both the United States Court of Appeals for the Federal Circuit and the United States Court of Federal Claims. The United States Court of Federal Claims is the successor trial court. *See* the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25 (1982); *Minesen Co. v. McHugh*, 671 F.3d 1332, 1341 n. 2 (Fed.Cir.2012) ("The Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, § 105(a), 96 Stat. 25 (amending 28 U.S.C. § 171(a)), established the United States Claims Court. The United States Claims Court inherited the trial jurisdiction of its predecessor, the United States Court of Claims. Congress renamed it the United States Court of Federal Claims by the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902, 106 Stat. at 4516."); *see also* Introduction to the Rules of the United States Court of Federal Claims (2011) ("The United States Court of Federal Claims (formerly designated United States Claims Court) was created by the Federal Courts Improvement Act of 1982 (Pub.L. No. 97–164, 96 Stat. 25 (1982)). The court inherited the [trial] jurisdiction formerly exercised by the United States Court of Claims.").[1] Since the Colorado Appellate Rule permits certification of questions of law to the Colorado Supreme Court from the predecessor United States Court of Claims, and from other federal trial courts, as well as federal appellate courts, it is logical to conclude that the Colorado Supreme Court permits certification from the United States Court of Appeals for the Federal Circuit and from this court, the United States Court of Federal Claims.

---

**1.** As of the date of the Order, no published decision in the United States Court of Federal Claims has certified questions of law to the Colorado Supreme Court. *But see A–B Cattle Co. v. United States*, 223 Ct.Cl. 514, 621 F.2d 1099 (1980) (Colorado Supreme Court answering a question of law certified by the United States Court of Claims).

Colorado Appellate Rule 21.1 states that "[a] certification order shall set forth: (1) The question of law to be answered; and (2) A statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose." Colo.App. R. 21.1(c). The following question is submitted to the Colorado Supreme Court for certification:

When a railroad obtains an easement for a railroad right-of-way through deed or condemnation, does Colorado law presume that, if the railroad later abandons the easement, the landowners on each side of the railroad right-of-way at the time of abandonment own the land from their respective property lines abutting the right-of-way to the centerline of the right-of-way?

Although plaintiffs were requested by this court to consult with the defendant on framing the question for certification to the Colorado Supreme Court, plaintiffs indicated they did not believe certification was appropriate, and, therefore, offered no suggestions as to the language drafted by the defendant, now submitted by this court to the Colorado Supreme Court for certification.

The 120 plaintiffs now before this court have acquired their interests over a more than 100 year period, through many real estate transactions. To date, the parties have not produced to each other or to the court the multiple deeds and other documentation necessary to reach a legal judgment as to the validity of the chains of title regarding the plaintiffs' properties, and no such determinations have been made. Resolution of the centerline presumption issue for property located in Colorado will assist the parties and the court to resolve the ownership issues in dispute in this class action and will clarify an important question of law for future Rails to Trails litigants from the State of Colorado.

Briefly summarized, the relevant facts are as follows. The plaintiffs in this case alleged that when the United States Department of Transportation's Surface Transportation Board (STB) issued a Notice of Interim Trail Use (NITU), the federal government denied the plaintiffs their reversionary interest in the rights of way located on their properties.

The plaintiffs alleged that converting the rights of way to a recreational trail by operation of the National Trails System Act, 16 U.S.C. § 1241 et seq. (2006), effected takings of their property. The issue presented in the *Asmussen* class action in the United States Court of Federal Claims is whether, when the United States issued the NITU and authorized recreational trail use of the former railroad rights of way running through the plaintiffs' lands, the United States effected a taking for which the plaintiffs should be allowed to seek just compensation under the Fifth Amendment to the United States Constitution. See, e.g., *Preseault v. United States*, 100 F.3d 1525, 1529 (Fed.Cir.1996). To reach a decision, this court must first determine whether each plaintiff owned a distinct property interest at the time of the alleged taking in order to have standing to bring suit. See *Cienega Gardens v. United States*, 331 F.3d 1319, 1328 (Fed.Cir.), *reh'g denied* (Fed.Cir. 2003).

In 1901, the Great Western Railway Company constructed a railroad line across Weld County, Colorado. A portion of the railroad corridor ran between Windsor, Colorado, at milepost 30.8 and Eaton, Colorado, at milepost 42.5. This section of the railroad line is called the Eaton Subdivision, and totals approximately 11.7 miles. When originally constructing the Eaton Subdivision, the Great Western Railway Company acquired the necessary rights of way from the individual landowners who owned the real property between mileposts 30.8 and 42.5. Of these original landowners, 22 granted the Great Western Railway Company the rights of way by deed, while one section of the right of way was acquired following a condemnation proceeding.

On October 21, 2003, the Great Western Railway of Colorado, the successor in interest to the Great Western Railway Company, filed a petition for an abandonment exemption with the STB to abandon the Eaton Subdivision between mileposts 30.8 and 42.5. The Great Western Railway of Colorado's STB filing contained all the necessary documents, including an affidavit certifying that "no local or overhead traffic has been handled on GWRC's [Great Western Railway of

Colorado's] Eaton Subdivision between milepost 30.8 near Windsor, Colorado and milepost 42.5 near Eaton, Colorado ... for at least ten (10) years prior to the date of this Verification and Certification." Great Western Railway of Colorado's STB filing also described the Eaton Subdivision line as being in poor condition, with no maintenance having been performed over the course of the same ten year period.

On November 10, 2003, the STB granted the Great Western Railway of Colorado's petition for an abandonment exemption, subject to potential reconsideration and other conditions. If none of the conditions were met, the exemption would become effective on December 10, 2003. *See Great Western Railway of Colorado, LLC—Abandonment Exemption—In Weld County, CO*, 2003 WL 22535982, at *1 (S.T.B. Nov. 10, 2003). One of the conditions was whether the STB had received a formal expression of intent to file an Offer of Financial Assistance prior to the December 10, 2003 effective date. *Id.* On November 14, 2003, Windsor, Severance & Eaton Railroad, LLC filed a record with the STB demonstrating its intent to file an Offer of Financial Assistance to purchase the Eaton Subdivision railroad line. *See Great Western Railway of Colorado, LLC—Abandonment Exemption—In Weld County, CO*, 2003 WL 22931592, at *1 (S.T.B. Dec. 12, 2003). On December 11, 2003, the Eaton, Severance, and Windsor municipalities petitioned the STB for reconsideration for the purpose of requesting railbanking and interim trail use as authorized by the Trails Act. A railbanked right of way remains subject to the STB's jurisdiction for potential future railroad use under 16 U.S.C. § 1247(d) (2006).

On April 7, 2004, the STB allowed the Windsor, Severance & Eaton Railroad, LLC to withdraw its Offer of Financial Assistance, and the STB issued a NITU allowing the Eaton, Severance & Windsor municipalities to negotiate with the Great Western Railway of Colorado for trail use. *Great Western Railway of Colorado, LLC—Abandonment Exemption—In Weld County, CO*, 2004 WL 741068, at *1 (S.T.B. April 7, 2004), *vacated*, 2006 WL 3019454 (S.T.B. Oct. 23, 2006). The

NITU stated that the municipalities' petition complied with the requirements of the Trails Act, and that the municipalities would assume financial responsibility for the right of way, subject to possible restoration of the right of way for railroad purposes in the future. *Id.* The NITU also indicated that the Great Western Railway of Colorado was willing to negotiate with the municipalities for trail use, and granted the withdrawal of Windsor, Severance & Eaton Railroad, LLC's Offer of Financial Assistance. *Id.* Despite several protests filed by an adjoining landowner against further extensions of time, the STB granted several extensions to the NITU negotiating period, ultimately extending the negotiation time period 180 days after March 28, 2006. *See Great Western Railway of Colorado, LLC—Abandonment Exemption—In Weld County, CO*, 2007 WL 1654155, at *1 (S.T.B. June 8, 2007). The negotiations between the Great Western Railway of Colorado and the municipalities, therefore, lasted from April 7, 2004 until November 13, 2006. On October 24, 2006, while negotiations were ongoing, the STB vacated the original NITU and issued a new NITU because the municipalities had formed a new governmental agency, the Great Western Trail Authority, whose purpose was to govern the trail. *See Great Western Railway of Colorado, LLC—Abandonment Exemption—In Weld County, CO*, 2006 WL 3019454, at *1 (S.T.B. Oct. 24, 2006). On November 13, 2006, a Donation Agreement was reached between Great Western Railway of Colorado and the Great Western Trail Authority, which included a Donative Quit Claim Deed and Bill of Sale. In this class action, the parties have stipulated that all of the conveyances only conveyed an easement to the railroad.

In response to defendant's assertion that the plaintiffs do not have standing because they have not established a property interest to bring their takings case in the United States Court of Federal Claims, and as part of proving title, the plaintiffs cited to the centerline presumption. Plaintiffs stated that "a railroad is a public highway under the Constitution of the State of Colorado and the centerline rule has been clearly established by the Colorado courts in a long line of

highway cases." Plaintiffs cited to Article XV, § 4 of the Colorado Constitution, which states, in part:

> All railroads shall be public highways, and all railroad companies shall be common carriers. Any association or corporation organized for the purpose, shall have the right to construct and operate a railroad between any designated points within this state, and to connect at the state line with railroads of other states and territories. Every railroad company shall have the right with its road to intersect, connect with or cross any other railroad.

Colo. Const. art. XV, § 4. In addition, plaintiffs cited to the Colorado statutes, stating, "[a]nother source of guidance can be found in C.R.S. § 43-2-302 dealing with the vacation of public roadways." Colorado statute § 43-2-302, "Vesting of title upon vacation," states in part,

> (c) In the event that a roadway bounded by straight lines is vacated, title to the vacated roadway shall vest in the owners of the abutting land, each abutting owner taking to the center of the roadway, except as provided in paragraphs (a) and (b) of this subsection (1). In the event that the boundary lines of abutting lands do not intersect said roadway at a right angle, the land included within such roadway shall vest as provided in paragraph (d) of this subsection (1).
>
> (d) In all instances not specifically provided for, title to the vacated roadway shall vest in the owners of the abutting land, each abutting owner taking that portion of the vacated roadway to which his land, or any part thereof, is nearest in proximity.

Colo.Rev.Stat. Ann. § 43-2-302(1)(c)-(d) (2012).

Plaintiffs argued that the caselaw is clear and that "[n]umerous cases in Colorado support and adopt the centerline rule. In *Overland Mach. Co. v. Alpenfels,* 30 Colo. 163, 69 P. 574 (1902), the Colorado Supreme Court held that a conveyance of a lot which borders a *highway* presumptively carries title to the center of the street. When the *road* was ultimately abandoned, the parties still owned the property to the center of the *road.*" (emphasis added). Plaintiffs also directed the court's attention to *Skeritt Investment Co. v. City of Englewood,* 79 Colo. 645, 248 P. 6 (1926). According to plaintiffs, in *Skeritt,*

> the Supreme Court of Colorado addressed a property dispute when a *road* was vacated and abandoned. The Court held that it was not important whether the *road* was the result of a common law or a statutory dedication or that the presumption of the centerline rule could be overcome by specific language contained within a deed but instead held that the abutting landowner took to the center of the street.

(emphasis added).

Plaintiffs further cited to *Morrissey v. Achziger,* 147 Colo. 510, 364 P.2d 187 (1961), claiming:

> The Supreme Court of Colorado reaffirmed the centerline rule in *Morrissey v. Achziger* [147 Colo. 510], 364 P.2d 187 (1961). The Court again addressed who owned what portion of a dedicated *street, alley* or *roadway* upon vacation and specifically held that "there can be no dispute that upon vacation the owners of property abutting thereon take and become the fee owners of that portion abutting their property and to the centerline of the vacated area." *Id.* at 189.

(emphasis added). Plaintiffs, however, also admitted that they "have not found any specific railroad case setting forth the centerline rule in Colorado."

After stating that the "[p]laintiffs have the burden of proving that they are the fee owners of some or all of the land underlying the subject railroad corridor" in order to proceed with a takings case, the defendant argued that "Colorado rejects the presumption that landowners on each side of an abandoned railroad right-of-way own the land from their respective property lines abutting the right-of-way to the centerline of the railway line." Defendant further indicated:

> Plaintiffs argue that the centerline presumption is "absolutely the accepted law in Colorado" with regard to determining ownership of land underlying *railroad right-of-ways,* because Colorado courts have used the presumption to determine ownership of vacated dedicated *public streets.* Plaintiffs

142

are wrong. Plaintiffs' reliance on Article 15, Section 4 of the Colorado Constitution, providing that "[a]ll railroads shall be public highways," is not persuasive. Plaintiffs mischaracterize the "long line of *highway* cases" that allegedly establish a centerline rule for *public highways* as also applicable to abandoned railroad corridors.

(emphasis added; internal citations omitted).

According to the defendant, "[t]he rationale for using the centerline presumption to determine the disposition of vacated dedicated public street does not apply to the abandonment of an easement for a railroad corridor ... acquired from individual landowners through deed or condemnation for use by the railroad," which is at issue in the *Asmussen* class action before the United States Court of Federal Claims. Defendant asserted that "the parties' disagreement as to the applicability of the centerline presumption in Colorado, and the Court's conclusion that there is no controlling precedent in Colorado, show that Colorado law is not clear."

This court would welcome guidance from the Colorado Supreme Court as to whether to apply the centerline presumption to abandoned railroad rights of way easements. Resolution of the issue may be determinative, and will substantially advance consideration of whether certain plaintiffs in this class action have a property ownership interest, and, therefore, have standing to pursue their takings claims in the United States Court of Federal Claims. Given the importance to the plaintiffs who are property owners in the State of Colorado, as well as to others in the State who might find themselves in a similar situation, this court believes it appropriate, initially, to defer to the Colorado Supreme Court. If the Colorado Supreme Court does not accept the certified question, this court will strive to decide the case as best it can, and as consistently as possible with existing Colorado law.

## CONCLUSION

For the reasons discussed above, this court believes it is appropriate to forward the question submitted by the United States for certification to the Colorado Supreme Court in order to permit the Colorado Supreme

Court to provide direction with respect to the disposition of lands within its state. Pursuant to Colorado Appellate Rule 21.1, this court respectfully requests the Colorado Supreme Court to address the following:

> When a railroad obtains an easement for a railroad right-of-way through deed or condemnation, does Colorado law presume that, if the railroad later abandons the easement, the landowners on each side of the railroad right-of-way at the time of abandonment own the land from their respective property lines abutting the right-of-way to the centerline of the right-of-way?

This court does not intend by its phrasing of the question to restrict the Colorado Supreme Court's consideration of any issues raised by this request. This court also acknowledges that the Colorado Supreme Court, at its discretion, may reformulate the question in the best interests of clarifying Colorado state law.

Respectfully submitted.