[No. 4225.]

THE OVERLAND MACHINERY COMPANY ET AL. v. ALPEN-
FELS ET AL.

1.   Conveyances—Highways—Presumption—Estate.

A conveyance of a lot which borders upon a highway presumptively carries the title to the center of the street, if the grantor owns the land on which the highway is laid out, and one

is presumed to convey the highest estate he owns in the lands granted, unless a smaller estate is described.

**2. Cities and Towns—Vacation of Streets—Reversion.**

Upon the vacation of a street by a city the title thereto reverts to the abutting lot owners, and not to the dedicator, where such lots have been conveyed by the dedicator by unrestricted deeds of conveyance.

**3. Cities and Towns—Dedication of Streets—Estoppel.**

Where the owners of land laid out an addition to a city and filed their plat on which was delineated a street, as between the owners of the addition and the purchasers of lots who bought with reference to the plat, the owners are estopped to deny the existence of the street, although there was no statutory dedication, and no acceptance by the city so as to constitute a common law dedication of the street.

**4. Cities and Towns—Streets—Abutting Lots—Reversion—Conveyance.**

The original owner who lays out an addition to a city and has the fee both in the streets and the abutting lots, may separate the two estates or titles and treat them as distinct and separate tracts or parcels. He may sell the lots and retain his estate in the adjacent street.

**5. Same.**

Where E. the owner of a city block who also owned the fee in the adjacent street conveyed the block to C. describing it by its proper number and in another clause in the same conveyance preceded by the word "also," quitclaimed all of his title and right of reversion in the street, the conveyance was a separation of the block and the street into separate tracts binding on both grantor and grantee and all subsequent grantees. And after the street had been vacated a deed whereby C. reconveyed the block to E, by number without mentioning the street, conveyed the block only with its boundary at the edge of the street, and conveyed no title or interest in any part of the street. And C. afterwards having conveyed the street to other parties his grantees held title to the vacated street in preference to owners of the block holding under conveyances from E.

**6. Same—Appurtenances.**

Where a grantee took a conveyance of a city block and the adjacent street by a deed which treated them as separate tracts or parcels, and after the street had been vacated by the city reconveyed the block "together with all appurtenances," the appurtenance clause did not operate to carry the street with the block.

*Appeal from the District Court of Arapahoe County.*

Caroline Alpenfels and Thomas F. Lynch, appellees, as plaintiffs below, brought separate actions against the defendants, appellants here, to recover possession of certain parcels of land in the city of Denver. The facts of the two cases are in all material respects the same, and the same legal principles govern each. By consent of parties they were consolidated and tried as one action. The judgment was in favor of the plaintiffs, and the defendants have brought the case here by appeal. There was an agreed statement of facts, the parts of which material to the decision are here reproduced.

In the month of April, 1868, Frederick J. Ebert and Francis M. Case were the owners of certain lands in the city of Denver, Arapahoe county, and on the 7th day of that month platted the same into lots and blocks, streets, alleys and parks, and named the same Case and Ebert's Addition to the City of Denver. The plat was filed and recorded in the office of the county clerk, and upon it was a statement by which the makers purported to grant to the city of Denver the perpetual right of way to all the streets and alleys and public parks thereon shown. On the plat is a block numbered 12, which is 400 feet long by 125 feet wide, consisting of 16 lots, and on the northwesterly side of the block, and contiguous thereto, is a street called "Depot Street," 400 feet long and 55 feet wide; and on the northwesterly side of Depot Street is a parcel of land owned and occupied by The Denver Pacific Railway and Telegraph Company for trackage purposes, which was conveyed to that company by Case and Ebert on the 11th of May, 1868.

On March 17, 1871, Frederick J. Ebert, who was then the owner of all of block 12, made conveyance to Francis M. Case of certain property designated

on this map and by reference thereto, which in the deed is thus described: "All block number twelve (12) in Case and Ebert's Addition to the City of Denver; also doth quitclaim all title in being and reversion, to the land now occupied by Depot Street * * lying contiguous to and adjoining said block." May 4, 1871, the city council of the city of Denver by ordinance lawfully vacated Depot Street adjacent to block 12, and on July 1, 1875, it passed a resolution that when streets and alleys in the city have been vacated by ordinance the mayor is authorized to execute a quitclaim deed to the owners of the lots abutting on the vacated streets; and in pursuance of that resolution there was executed by the mayor on the next day a quitclaim deed to Francis M. Case of what was formerly known as Depot Street fronting upon block 12 which had theretofore been vacated.

On January 15, 1878, Francis M. Case by deed conveyed back to Frederick J. Ebert, his own immediate grantor, block 12, thus describing it: "All of block number twelve (12) in Case and Ebert's Addition to Denver, together with all and singular the hereditaments and appurtenances," and the deed contained the usual clause including therein all the estate and interest Case had in the premises.

On December 16, 1881, Francis M. Case conveyed to Arthur Hendey and Herman H. Meyer that portion of Depot Street contiguous to block 12 under the following description: "All that strip of land, formerly known as Depot Street, lying northwesterly and opposite block numbered twelve (12) in Case and Ebert's Addition to Denver, and between said block and the grounds of the Denver Pacific Railway Company, being fifty-five feet (55) in width and four hundred feet in length."

On January 13, 1882, Mary J. Ebert and James

M. Strickler, as administrators of the estate of Frederick J. Ebert, conveyed lots 1, 2 and 3 in block 12 to John G. Gunther, thus described: "Lots number one (1), two (2), and three (3) in block number twelve (12), Case and Ebert's Addition to the City of Denver." In the deed there was no reference to appurtenances.

The plaintiffs connect themselves by divers mesne conveyances with the title of lots 1, 2 and 3 thus transferred to Gunther, and all the intermediate deeds describe the lots by their appropriate numbers and by reference to the recorded plat and contain the usual clauses and covenants of a deed of warranty; and the defendants deraign title to Depot Street by proper conveyances from Hendey and Meyer, in all of which the strip is described as in the deed to them. All of these instruments referred to were seasonably placed on record.

The accompanying map shows the ground in controversy, and it consists of the shaded strip 55 feet in width by 75 in length immediately in the rear of lots 1, 2 and 3 in block 12. From this map it will be observed that the lots in block 12 run through from Blake Street on the southeast to Depot Street on the northwest, a distance of 125 feet; and it appears in the record that the frontage of these lots was on Blake, and their rear on Depot Street. Such other facts as are necessary to elucidate the points involved are found in the opinion.

Exhibit "1 a."

Portion of Recorded Plat of Case and Ebert's Addition to
City of Denver.

Messrs. YEAMAN & GOVE, for appellants.

. Mr. EDWIN H. PARK, for appellees.

CHIEF JUSTICE CAMPBELL (after the foregoing statement) delivered the opinion of the court.

The respective contentions of the parties may thus be summarized: Both of them claim to be the owners in fee of this disputed strip. The plaintiffs maintain that when the city council vacated that portion of Depot Street contiguous to block 12, the title thereto reverted to the abutting lot owners; or if Depot Street never was a public street, or was only a highway as to abutting lot owners, then in these abutting owners was vested the fee to the road, subject to any possible easement, to each one such portion of the vacated strip, or existing way, as was immediately adjoining his lot. And since Case then owned all of block 12, the legal title of the street, if vacated, lying contiguous to that block reverted to him, or was his, in any event, by virtue of his ownership of the lots. So that when in 1878 Case conveyed to Ebert all of block 12 without any reservations in the deed, and although the street was then vacated, the grantee took at least to the middle line of what was formerly Depot Street. Having connected themselves with Ebert's title to lots 1, 2, and 3, plaintiffs, therefore, claim the ownership of that portion of the former street lying opposite the rear of their lots.

The defendants' position is that, under the agreed facts, the deed of January 15, 1878, from Case to Ebert describing all of block 12 in Case and Ebert's Addition. by reference to the recorded plat and the subsequent deeds by which plaintiffs deraign title to lots 1, 2 and 3 limited the grant to the dimensions of the lots and block as exhibited by the plat, and conveyed no part of the premises in con-

troversy; but that title to the latter remained in Case after his conveyance of block 12 to Ebert, and Case afterwards transferred title thereto to Hendey and Meyer, defendants' remote grantors. Their further position is that even if a conveyance merely by lot numbers—made before a street, delineated on the map, was vacated—would carry title in the grantees to the center line of the vacated street, yet after its vacation a deed merely describing the lots by number restricts the grantees to the dimensions as they are defined on the map and entirely excludes the street.

It may be stated as a general rule that a conveyance of a lot which borders upon a highway presumptively carries the title to the center of the street, if the grantor owns the land on which the highway is laid out (2 Devlin on Deeds, § 1024 and cases cited); and that one is presumed to convey the highest estate he owns in the lands granted unless a smaller estate is described.—*City of Denver v. Clements*, 3 Colo. 472. And the law in this jurisdiction (*Olin v. D. & R. G. R. R. Co.*, 25 Colo., 177) is that upon a vacation by a city of a street, the title thereto reverts to the abutting lot owners, and not to the dedicator where such lots have been conveyed by the dedicator by unrestricted deeds of conveyance. Both parties concede the last rule and both rely upon it.

When this plat was filed we had no statute declaring the force and effect of the making and recording of a plat of an addition to a city.—*Mouat Lumber Co. v. Denver*, 21 Colo., 1. There was, therefore, no statutory dedication of Depot Street. If there was a dedication at all, it was a common law dedication, but as the city neither expressly nor impliedly accepted it, there seems not to have been even a common law dedication, so far as the municipality is concerned. Under the doctrine of *City of Denver*

*v. Clements, supra,* and other well considered cases, we are of the opinion that when Case and Ebert laid out their addition and filed their plat on which there was delineated Depot Street, though no statutory dedication was made and there was no acceptance by the city so as to constitute such act a common law dedication, yet as between the owners of the addition and the purchasers of lots who bought with reference to the plat, the owners, though not the city, would be estopped to deny the existence of Depot Street as a public highway. But it is not important in this case, as we shall see later on, whether there was, or was not, a common law dedication of Depot Street, or whether the owners of the addition were estopped, as against purchasers of lots, to deny that it became a highway.

Much argument, pro and con, is devoted to the proposition that a deed describing property by lot and block number operates as a conveyance of contiguous property which was at one time, but is no longer, included within the limits of a public street. The plaintiffs rely chiefly upon *Paine v. Consumers etc. Co.,* 71 Fed. Rep., 626, wherein Taft, circuit justice, in an elaborate opinion declares the rule is the same whether at the time of conveyance the street actually exists, or once was, but is no longer, a highway. The defendants to the contrary cite *Harris v. Elliott,* 10 Pet., 25; *Sanchez v. Grace Church,* 114 Cala., 295; *Brown v. Taber,* 103 Ia., 1; *Chicago Lumber Co. v. Driving Park,* 97 Ia., 25; *Darrow v. Village of Homer,* 122 Mich., 229. The decision here, however, does not require us to establish the rule for this jurisdiction, and for our present purpose we might well assume that plaintiffs are right in their contention. In 2 Devlin on Deeds, § 1024, the author says that unless the deed manifests an intention on the part of the grantor to limit the boundary line, the

line, when the land is bounded by a highway, extends to the center of such highway, if the grantor is the owner of the fee.—*Thomas v. Hunt,* 134 Mo., 392-401; *Snoddy v. Bolen,* 122 Mo., 479, 483-6. And in § 1025 he says that this rule is one of construction only, may be rebutted, and of course does not govern when it appears on the face of the deed that the intention was that the grantee should take only to the side of the street. The doctrine of the latter section, in our judgment, is decisive of this case.

In the statement of facts it appears that the ordinance of the city of Denver by which Depot Street was vacated was passed in the year 1874. This apparently is a mistake, for it was declared by this court in *Mouat Lumber Co. v. Denver, supra,* where the same ordinance was before the court, that it was approved on the 4th of May, 1871, which the records of the city of Denver establish. But the exact date is not important in this case, for it is clear that there was on the records of Arapahoe county affecting the title to block 12 sufficient to show in 1878, when Case deeded block 12 to Ebert, that not only had Depot Street been lawfully vacated by the city council, but that both Case and Ebert, as the original owners of the addition, and Case, as the then owner of block 12, knew of the vacation by the city, and both of them by their acts intended to work a vacation of Depot Street as to abutting owners.

In determining the intention of the grantor and grantee with respect to the quantity or boundaries of land intended to be conveyed, resort may be had to the language of the description contained in the deed. If words are therein found clearly showing an intention to restrict its limits, that intention will prevail. That the original owner who has the fee both in the streets and lots abutting thereon has the right to retain his estate in the former when he sells the lat-

ter, that he may separate the two estates or titles, and treat them as distinct and separate tracts or parcels, is too clear for argument.—*Jackson v. Hathaway,* 15 Johnson, 447.

In *Paine v. Consumers Co., supra,* so strongly relied upon by the plaintiffs, the court in ascertaining the intention of the parties observed that in the deed no mention was made of land in Water Street (that being the street in question) although if that was to be treated as another and distinct lot it contained as much as a half a dozen platted lots. Obviously, if in that deed, under which the grantee claimed that his line was carried to the center of the street, mention had been made of Water Street as a distinct and separate lot from the lots conveyed as appurtenant to which the soil of the street to the center was claimed, the grant would have been restricted to the side or edge of the street nearest to those lots, and not extended to its center.

Let us then carefully look to the language of the description in the deed of March 17, 1871, from Ebert to Case. Ebert then owned all of block 12 and all of Depot Street opposite the same. The deed reads: "All block numbered twelve (12) in Case and Ebert's Addition to the City of Denver; also doth quitclaim all title in being and reversion, to the land now occupied by Depot Street * * lying contiguous to and adjoining said block." Clearly, then, Ebert treated block 12 and Depot Street as separate and distinct tracts and by the conveyance of block 12 did not intend to extend the grant so as to include any part of the adjacent street. For, after conveying the block by reference to its number as shown on the recorded plat, he quitclaims all title to the "land now occupied by Depot Street * * lying contiguous to and adjoining said block." We must not disregard this additional description as surplusage; on the contrary

we are bound to assume, if we can, that the parties meant something by it. If, as contended by the plaintiffs, by this deed Ebert intended to convey to Case the portion of Depot Street contiguous to block 12 as appurtenant to, or as part of, that block, he would have stopped after describing block 12; but by the use of the word "also" which, in a case of this sort, means something in addition to that previously described, he proceeds to include in the grant something not theretofore embraced in a previous description. And when he adds Depot Street to the grant he says, in effect, that he intends to pass a parcel of land distinct and different from what he has already described. Devlin on Deeds, § 864; *Panton v. Tefft*, 22 Ills., 366, 375-6. Not only Ebert, as grantor, was bound by this description; so, also, was Case, as grantee. Both of them, the grantor in conveying, and the grantee in accepting, the deed, must have intended that the conveyance of block 12 by its appropriate number with reference to the plat extended only to the nearest side, and not to the center, of Depot Street, and by describing with particularity as one of the parcels of the grant that portion of Depot Street lying adjacent to block 12 the parties intended to include such portion as a separate and distinct parcel. It is this deed which, in our judgment, clearly shows the intention of the parties to restrict block 12 to the southeasterly side of Depot Street.

Bearing in mind, then, that when Ebert in 1871 conveyed to Case all of block 12 and, as a separate tract, his interest in the adjacent portion of Depot Street, the parties considered them as separate and distinct tracts of land, and that by conveying block 12 by its appropriate number and such portion of Depot Street as separate tracts Ebert intended to grant, and Case intended to receive, block 12 as ex-

tending only to the southeast side of that street, it necessarily follows that, unless there is something in the language of his deed to the contrary, when Case reconveyed to Ebert all of block 12 by describing it by its appropriate number, the intention of both parties was the same as theretofore, viz, to carry its boundary to the edge, and not to the center of the street. Indeed, when once there has been a conveyance excluding a highway from the grant, as was done by Ebert in his deed to Case, neither Case, nor any subsequent grantee, can include it, for he would be conveying something as a part of the specific thing granted which was distinct from it. 4 Enc. of Law (2d ed.), 817.

Case, then, in 1878, being the owner of all block 12 and also the title of Depot Street adjacent thereto certainly had the right to continue as separate the two titles and two tracts of ground which he held, just as Ebert did when title passed from him to Case. The parties concerned therefore, having severed the two estates, having by their deed in effect manifested their intention to vacate Depot Street and having limited block 12 to the southeasterly side of that street, it was beyond the power of their subsequent grantees to reunite them in one tract, or to convey the street as appurtenant to the lots in the block, without the consent of all the parties concerned. In other words, if Ebert, when he took title to block 12 in 1878. intended to receive by his grant from Case title thereto restricted to the southeasterly side of Depot Street, and such intention appears upon the face of the record, as we hold it does, with knowledge of which his grantees are charged, neither he nor they may now claim any portion of Depot Street as part of, or as appurtenant to, that block.

In his brief counsel for plaintiffs lays much

stress upon the fact that in the deed of Case to Ebert there is a clause "together with all appurtenances," etc., and particular emphasis is placed upon the omission evidenced by erasures in the habendum clause in the deed from Case to Hendey and Meyer, which, if present, would import seisin in fee in Case, and the further erasure of certain words which, if present, would constitute a warranty by Case of an estate in fee simple. The presence of the word "appurtenances" is said to signify an intention to pass Depot Street as a parcel of, or as appurtenant to, block 12, while the erasure of the seisin and warranty clauses is said to be equivalent to a declaration by Case that he had nothing to convey.

To this we reply: The presence of the "appurtenance clause" in this deed is no more significant than the absence thereof in the deed of Ebert's administrators to Gunther, plaintiffs' grantor, of these three lots. If its presence in the one case is conclusive that the street passed as an appurtenance, its absence in the other is equally conclusive that the grantee did not obtain title to the street as an appurtenance of the block. But when it is considered that at the time and for many years thereafter there was no decision of the supreme court of this state as to where the title of a vacated street went,—whether to the didicator, to the abutting land owners, or remained in the municipality,—and that in the deed from Ebert to Case the grantor merely quitclaimed Depot Street, the exercise of ordinary business prudence and sagacity on the part of Case sufficiently accounts for the erasures in the deed by which he merely transferred to Hendey and Meyer whatever title he had got from Ebert, without covenanting to warrant and defend the same as an estate in fee simple.

The conclusion which we have reached in no wise depends upon the acts and conduct of the respective parties after obtaining title; but if we should consider the facts we find that Ebert soon after his purchase from Case in 1878 built a fence directly upon the rear line of these three lots, which has been there maintained up to the present time; that Case conveyed to Hendey and Meyer Depot Street as a distinct parcel, and as soon as they obtained title they continuously treated the premises as private property and devoted it to their own use, as their successive grantees have also done. While in some respects there may have been a use of this strip in controversy in common by the defendants and the plaintiffs, nevertheless, while not important, we think that the clear preponderance of the evidence embodied in the agreement shows that the defendants have claimed the title in good faith and maintained an exclusive and adverse possession. We mention it only as bearing on the equities of the case. As our decision is put on the intention of the parties apparent on the face of the deeds, we have not considered the defense of the statute of limitations interposed by appellants, or the claim of appellees, under cross-errors, that they are not limited in their recovery to one-half, but are entitled to the whole, of the strip in controversy. The judgment should be reversed and the cause remanded with directions to the district court to enter judgment in favor of the defendants, together with their costs, and it is so ordered.                                *Reversed.*