[No. 4720.]

THE CITY OF LEADVILLE v. THE BOHN MINING COMPANY ET AL.

**Cities and Towns—Dedication of Streets—Title Acquired—Statutory Construction.**

Under § 2647, Genl. Laws 1877, providing that all avenues, parks, and other places designated for public use on the plat, shall be deemed to be public property, and the fee thereof shall be vested in such city or town, a city has such estate or interest as is reasonably necessary to enable it to utilize the surface and so much of the ground underneath as might be required for laying gas pipes, building sewers, and other municipal purposes, but it has no interest in the ores that may exist thereunder. —P. 253,

*Appeal from the District Court of Lake County.*
*Hon. S. M. Bailey, Judge.*

Action by the City of Leadville against The Bohn Mining Company and The St. Louis Smelting and Refining Company: From a judgment for defendants, plaintiff appeals.    *Affirmed.*

Mr. WM. H. HARRISON and Messrs. BLAKE & THOMPSON, for appellant.

Mr. JOHN A. EWING and Mr. CHARLES CAVENDER, for appellees.

The facts upon which this controversy arises are, in brief, as follows: The St. Louis Smelting and Refining Company, a corporation, being the owner of certain portions of what is known as the "Starr Placer," on April 18, 1879, by its attorney in fact, John E. Maul, filed for record with the clerk and recorder of Lake county, a plat known as "The St. Louis Smelting and Refining Company's Addition to the City of Leadville," with the following indorsement thereon: "And the said company hereby dedicates and conveys to said city, as public property, the streets and alleys, so as aforesaid laid off, marked and designated as such in said plat." On May 1, 1879, this plat was presented to the city council, and the following proceedings in relation thereto appear upon the records of the council of that date:

"The Council met pursuant to adjournment; the following members present: Mayor James, Aldermen Murphy, McMillan, Monroe, McComb, Kelly, Cavanaugh.    *    *    *

"It was next resolved that the plat of town lots made by The St. Louis Smelting and Refining Company, and entitled 'The St. Louis Smelting and Refining Company's Addition to the City of Leadville,' be, and the same is hereby, approved.

"It was further resolved, that buildings on the south side of State Street, between the east line of Pine Street and the west line of Harrison Avenue, which encroach upon State Street, as the same is platted, be, suffered to remain as they now are until voluntarily removed by the owners thereof, or until their destruction by fire or other cause, in the case of such removal or destruction and the erection of new buildings in their place, and new buildings shall conform to the street as platted.

"The two above resolutions were adopted, and on motion of Alderman Kelly, seconded by Alderman Monroe, on a unanimous vote of the Council declared on roll call."

On June 30, 1879, James R. Loker, as its attorney in fact, filed for record with the clerk and recorder a plat of another portion of the premises with the same indorsement as above quoted. There is no evidence that it was ever filed with the city clerk, and there is no evidence, or offer of evidence, or attempt to show, that it was ever presented to the city council for approval, or that the city council ever approved, or attempted to approve, or took any action whatever in reference to the approval of, any such plat.

The Bohn Mining Company, as a lessee of the St. Louis company at the time this action was commenced and for some time prior thereto, was engaged in mining and extracting ore at a depth of from 400 to 500 feet beneath the surface of the streets and alleys included within the foregoing plats. This mining in no way interfered with the use of the streets by the public as highways, nor with the plaintiff in the use of the same for municipal purposes. The action was brought to recover possession of the ground occupied by the defendants, and to restrain them from mining and extracting ore therefrom, and for damages for the ore mined.

Mr. JUSTICE GODDARD delivered the opinion of the court:

This case presents, among others, the same question that was involved in the case of *The City of Leadville v. The Coronado Co.,* recently decided, and under the ruling in that case, the plat and map of the Second Addition, not having been approved by the city council, as required by the statute, must be held inoperative as a statutory dedication, and need not be further considered.

In regard to the First Addition, it appears that a plat was submitted to the city council and by resolution adopted by unanimous vote of the members elected to the council, accepted and approved. This plat was filed with the clerk and recorder of Lake county. It is alleged in the complaint that it was also filed with the clerk of the city of Leadville. This allegation is not denied by the answer, and must be taken as true. We shall, therefore, consider the plat of the First Addition as having been accepted and recorded, as the statute requires, and shall hold it sufficient to constitute a statutory dedication of the streets and alleys therein designated.

This brings us to the question, what interest or estate in the streets and alleys is vested thereby in the plaintiff? Section 6 of the act of 1877 provides that: "All avenues, streets, alleys, parks, and other places designated or described as for public use on the map or plat of any city or town, or of any addition made to such city or town, shall be deemed to be public property, and the fee thereof be vested in such city or town."

By virtue of this section, the fee of the streets being vested in the city, it is necessary for the purposes of this case to determine what constitutes a street as therein contemplated. Elliott on Roads and

Streets (2d ed.), § 16, defines a street as follows: "A street is a road or public way in a city, town or village." Section 17: " 'Street' means more than the surface; it means the whole surface and so much of the depth as is, or can be, used, not unfairly, for the ordinary purpose of a street. It comprises a depth which authorizes the urban authority to do.that which is done in every street, namely, to raise the street, and lay down sewers.  *  *  *  'Street,' therefore, in-cludes the surface and so much of the depth as may not unfairly be used as streets are used."

In section 18 he gives the meaning of the term "street" in a plat or map as follows: "If an owner of land makes a plat of a city or town, and refers to streets, he must be taken to mean public urban ways in all that the term implies. He sets apart, by such an act, the land indicated as a street to all the public uses to which a public urban way may be properly appropriated. The easement thus created is determined by applying to the word 'street' the signification usually assigned it by the law."

In *City v. Clements*, 3 Colo. 472, 486, Justice Elbert said: "The term 'street,' used upon a map of a town or city, imports a public way for the free passage of its trade and commerce. Such is its natural and usual signification."

In *Coverdale v. Charlton*, 4 Law Reports Queen's Bench Division 104, the decision of the case depended upon the interpretation, or meaning, of the following provision of an act of parliament: "All streets shall vest in, and be under the control of, the urban authority." After deciding that the words "vest in" mean to give a property in, Brett, L. J., says: "But when we have decided that the words 'vest in' mean to give a property in, a further question would be, In what does it give the property? That must depend upon the subject to which those

words relate, and that is not land, but·street; the section does not say that the land 'shall vest in,' but that 'the street shall vest in.'  *  *  *  'Street' means more than the surface, it means the whole surface and so much of the depth as is or can be used, not unfairly, for the ordinary purposes of a street. It comprises a depth which enables the urban authority to do that which is done in every street, namely, to raise the street and to lay down sewers; for, at the present day, there can be no street in a town without sewers, and also for the purpose of laying down gas and water pipes.  'Street,' therefore, in my opinion, includes the surface and so much of the depth as may be not unfairly used as streets are used.  It does not include such a depth as would carry with it the right to mines."  Bramwell, L. J., says: " 'Street' comprehends what we may call the surface, that is to say not a surface bit of no reasonable thickness, but a surface of such a thickness as the local board may require for the purpose of doing to the street that which is necessary for it as a street, and also of doing those things which commonly are done in or under the streets; and to that extent they had a property in it."

In *Kister v. Reeser,* 98 Pa. St. 1, Mr. Justice Trunkey used these words:  "The word 'road' has never been defined to mean 'land.' ".

In view of this uniform and well settled definition of its meaning, we think it clear that the legislature intended, by the use of the term "street," to vest in the city such estate or interest as is reasonably necessary to enable it to utilize the surface and so much of the ground underneath as might be required for laying gas pipes, building sewers, and other municipal purposes.  In other words, the legislature used the term "fee," not according to its

technical legal meaning, but as vesting in the city a complete, perpetual and continuous title to the space designated as streets, so long as it used them for the purpose intended.—*Kellogg v. Malin,* 50 Mo. 496; *Ditch Co. v. Ice and Storage Co.,* 82 Pac. Rep. 940.

In the case of *People v. Kerr,* 27 N. Y. 188, the court had under consideration the title held by the city of New York in its streets by virtue of the act of 1813. Emott, Justice, speaking for the court, said:

"The language of the statute in 1813, is certainly explicit, that the fee of the streets to be opened under it, shall be vested in the corporation of New York. * * * There can be no doubt that the legislature intended to confer upon the city of New York, when its authorities accepted or enforced the appropriation of land to the purposes of a street, a more entire ownership or more complete control than was supposed to be needed, or was allowed to be acquired by the public in the case of ordinary roads. Still, in my opinion, the interest or estate thus conferred upon the city is limited and not absolute, limited by the purposes of the grant, notwithstanding the broad language of the statute. * * * Assuming, however, that the proceedings under the act of 1813, * * * have the effect to vest in the city of New York that indefeasible and entire title in fee to the streets, yet that title is thus vested in a municipal corporation, a public body, exercising, within its sphere, a portion of the sovereignty of the state. * * * The title conferred upon this public agent is wholly for public purposes and not for profit or emolument of the city, if that can be regarded or treated as a private corporation, in any aspect or for any purpose. The city has neither the

right nor the power to apply any such property to other than public uses, and those included within the objects of the grant. Whatever may be the quantity or the quality of the estate of the city of New York in its streets, that estate is essentially public and not private property, and the city, in holding it, is the agent and trustee of the public and not a private owner for profit or emolument."

It seems clear to us, therefore, that the intent and purpose of our statute is to clothe the city in its governmental capacity with the entire title to the streets, as such, for public use, and not for the "profit or emolument of the city.". It was plainly the intention of the dedicator to part with the title to so much of its property only as was necessary to effectuate the purpose of establishing certain streets and alleys, designated and described upon the plat, for public use, and to clothe the city with the absolute title thereto for that purpose only, and not to vest it with any estate or interest in the ores that may exist thereunder.

The cases cited by counsel for appellant are based upon statutes that expressly provide that a statutory dedication shall vest the fee to the "land," "ground," or "premises" donated for streets or other public uses in the municipality, and, therefore, are not applicable to a dedication under our statute which, as we have seen, vests the fee in the "streets," as such.

It follows that the plaintiff cannot maintain this action. The judgment of the court below is affirmed.

*Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE BAILEY concur.