The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 15, 2022

## 2022COA110

### No. 21CA0700, *Great Northern v. Extraction Oil & Gas* — Real Property — Quiet Title — Conveyances — Centerline Presumption — Mineral Estates

The centerline presumption is a common law rule of conveyance, which generally provides that "a conveyance of land abutting a road or highway is presumed to carry title to the center of that roadway to the extent the grantor has an interest therein, unless a contrary intent appears on the face of the conveyance." *Asmussen v. U.S.*, 2013 CO 54, ¶ 15. In this quiet title action, a division of the court of appeals resolves an issue of first impression in Colorado: Does the common law centerline presumption apply to convey the mineral interests beneath a dedicated right-of-way to the owners of abutting parcels?

Applying settled principles of property law, the division concludes, as a matter of first impression, that when the centerline presumption applies, it applies to convey all interests a grantor possesses in the property underlying a right-of-way, including mineral interests. The division also clarifies the conditions that must be met before the centerline presumption applies.

Court of Appeals No. 21CA0700
Weld County District Court No. 19CV30091
Honorable Shannon D. Lyons, Judge

Great Northern Properties, LLLP, a Colorado limited liability limited
partnership,

Plaintiff-Appellant,

v.

Extraction Oil and Gas, Inc., Richmark Energy Partners, LLC, and Richmark
Royalties, LLC,

Defendants-Appellees.

JUDGMENT AFFIRMED IN PART, REVERSED IN PART
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE BROWN
Vogt* and Hawthorne*, JJ., concur

Announced September 15, 2022

Witwer, Oldenburg, Barry & Groom, LLP, Patrick M. Groom, Kent A. Naughton,
Greeley, Colorado, for Plaintiff-Appellant

Welborn Sullivan Meck & Tooley, P.C., Joseph C. Pierzchala, Samuel S. Bacon,
Jens Jensen, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2021.

¶ 1    The common law centerline presumption generally provides that when grantors convey land abutting a right-of-way, they intend to convey title to the center of the right-of-way, unless the conveyance reveals a contrary intent. *Asmussen v. United States*, 2013 CO 54, ¶ 15. In this quiet title action, plaintiff, Great Northern Properties, LLLP (GNP), and defendant, Extraction Oil and Gas, Inc. (Extraction), ask us to resolve an issue of first impression in Colorado: Does the centerline presumption apply to convey the mineral interests beneath a dedicated right-of-way to the owners of abutting parcels?

¶ 2    Applying settled principles of property law, we conclude that, when the centerline presumption applies, it applies to all interests a grantor possesses in the property underlying a right-of-way, including mineral interests. We also clarify the conditions that must be met before the centerline presumption applies.

¶ 3    We therefore affirm the district court's C.R.C.P. 56(h) determination of law and that part of its final judgment denying GNP's quiet title claim. But because the judgment quieted title to mineral interests beyond those claimed by the two landowner defendants that had participated in the proceeding, we reverse the

1

judgment and remand to the district court with directions to correct the decree quieting title and dismiss the case as to the remaining defendants.

## I.    Background

¶ 4    As of February 1974, a real estate developer owned in fee simple absolute a parcel of land located in the NW ¼ of the NW ¼ of Section 12, Township 5 North, Range 66 West of the 6th P.M., City of Greeley, County of Weld, State of Colorado.  At some point, the developer subdivided the property into individual lots.

¶ 5    On February 15, 1974, the developer dedicated a right-of-way across its land to the City of Greeley.  The City accepted the dedication on April 16, 1974.  The right-of-way became known as West 11th Street Road (11th Street).

¶ 6    On March 11 and March 27, 1974, the developer conveyed two parcels of land abutting 11th Street to two different grantees.  The deeds conveying these parcels describe the property by metes and bounds but do not reference 11th Street.  The deeds do not expressly reserve to the developer any mineral interests.

¶ 7    On November 12, 1975, the developer conveyed a third parcel of land abutting 11th Street.  The deed conveying this parcel

describes the property by metes and bounds with reference to 11th Street. This deed does not expressly reserve to the developer any mineral interests. Once the developer conveyed this third parcel, it no longer owned any property adjacent to 11th Street.[1]

¶ 8 More than forty years later, on January 2, 2019, the developer conveyed whatever interest it had in the minerals beneath 11th Street to GNP.[2] The same month, GNP brought a C.R.C.P. 105 action to quiet title to the mineral estate under the relevant section of 11th Street. As we understand the record, Extraction has oil and gas leases from the owners of all parcels abutting the relevant section of 11th Street and from GNP. Extraction is therefore entitled to drill and produce oil and gas from beneath the relevant portion of 11th Street regardless of who owns the mineral estate, but ownership dictates to whom Extraction must pay royalties.

¶ 9 In May 2019, Extraction filed a motion for determination of a question of law pursuant to C.R.C.P. 56(h) in which it argued that,

---

[1] These three parcels have since been further subdivided and conveyed to new owners.
[2] Neither the developer nor GNP has acquired or reacquired any mineral interests in any of the parcels abutting the road. GNP does not claim an interest in the mineral estate beneath those parcels.

applying the centerline presumption, the owners of the parcels abutting 11th Street own the mineral rights beneath 11th Street to the centerline of the road. After hearing oral argument, in a forty-nine-page order (the November 2019 Order), the district court granted the motion and ruled that the developer "conveyed the mineral estate to the centerline of the roadway if the abutting lot owners carry their burden of proving" the conditions it discerned from the Colorado Supreme Court's decision in *Asmussen*.

¶ 10    Despite this ruling, GNP filed a motion for summary judgment asking the district court to enter a final judgment decreeing that it owns the mineral interests beneath the relevant portion of 11th Street. Relying on the legal conclusions in its November 2019 Order and the parties' stipulations regarding the then-current ownership of the parcels abutting 11th Street, the court denied the motion and entered final judgment quieting title to the disputed mineral interests in the two landowner defendants that had participated in the proceeding.

II.    Application of the Centerline Presumption to Mineral Estates

¶ 11    GNP contends that the district court erred by applying the centerline presumption to conclude that a deed conveying a

grantor's interest in property adjacent to a right-of-way also conveys any interest the grantor may have in the mineral estate beneath and to the center of the right-of-way. We disagree.

## A. Standard of Review

¶ 12     We review an order granting a motion for a determination of a question of law de novo, applying the same standard as the district court. *In re Estate of McCreath*, 240 P.3d 413, 417 (Colo. App. 2009). "If there is no genuine issue of any material fact necessary for the determination of the question of law, the court may enter an order deciding the question." C.R.C.P. 56(h).

## B. When the Centerline Presumption Applies, It Applies to All Interests a Grantor Possesses in the Property Beneath the Right-of-Way, Including Mineral Interests

¶ 13     Considering the centerline presumption along with other well-settled principles of property law, we conclude that, when the centerline presumption applies (that is, when all preconditions to its application are met, as discussed in Part II.C, below), it applies to *all interests* the grantor possesses in the property underlying the right-of-way, including mineral interests.

¶ 14     The centerline presumption, a common law rule of conveyance, provides that "a conveyance of land abutting a road or

5

highway is presumed to carry title to the center of that roadway to the extent the grantor has an interest therein, unless a contrary intent appears on the face of the conveyance." *Asmussen*, ¶ 3; *see also Skeritt Inv. Co. v. City of Englewood*, 79 Colo. 645, 652, 248 P. 6, 9 (1926) ("[W]hen land abuts on a street or highway it is presumed that the grantor intended by his deed thereof to convey to the center of such street or highway."); *Overland Mach. Co. v. Alpenfels*, 30 Colo. 163, 170, 69 P. 574, 575 (1902) ("[A] conveyance of a lot which borders upon a highway presumptively carries the title to the center of the street, if the grantor owns the land on which the highway is laid out . . . .").

¶ 15    The law also presumes that a grantor intends to convey along with the property all its appurtenant advantages and rights, *Asmussen*, ¶ 19, and that a grantor conveying property by deed intends to convey their entire interest unless a portion of that interest is expressly excepted from the conveyance, *Enerwest, Inc. v. Dyco Petroleum Corp.*, 716 P.2d 1130, 1132 (Colo. App. 1986). *See also Overland*, 30 Colo. at 170, 69 P. at 575 ("[O]ne is presumed to convey the highest estate he owns in the lands granted, unless a smaller estate is described."); *Olin v. Denver & Rio Grande R.R. Co.*,

6

25 Colo. 177, 180, 53 P. 454, 455 (1898) ("When there is no reservation in an absolute deed, the most valuable estate passes of which the grantor is seised.").

¶ 16    As to mineral interests specifically, "a conveyance of land by general description, without any reservation of a mineral interest, passes title to both the land and the underlying mineral deposits." *O'Brien v. Vill. Land Co.*, 794 P.2d 246, 249 (Colo. 1990).  The reservation or exception of a mineral estate severs it from the surface estate, creating multiple estates in the same land.  *See Mitchell v. Espinosa*, 125 Colo. 267, 273-74, 243 P.2d 412, 413 (1952); *Calvat v. Juhan*, 119 Colo. 561, 566, 206 P.2d 600, 603 (1949).  The severance of a mineral estate from a surface estate "must be by clear and distinct wording in the conveyance."  *Radke v. Union Pac. R.R. Co.*, 138 Colo. 189, 209, 334 P.2d 1077, 1088 (1959).  Until such a severance occurs, however, "the ownership of the surface carries with it the ownership of the underlying minerals."  *Id.*

¶ 17    Under these fundamental rules of property conveyance, when a grantor conveys property abutting a right-of-way by deed without express reservation of the mineral estate, it is presumed that (1) the

7

grantor intends to convey the highest estate owned to the centerline of the right-of-way, and (2) the highest estate includes both the surface and the unsevered mineral estate. Thus, the centerline presumption can apply to mineral estates.

### C.    Several Conditions Must Be Satisfied before the Centerline Presumption Applies

¶ 18    In its most recent decision discussing the centerline presumption, the Colorado Supreme Court explained the presumption's purpose and articulated several historical conditions that must be satisfied before it applies. *Asmussen*, ¶¶ 15-22, 27-29. The court explained that the centerline presumption gives effect to the presumed intent of the grantor both to convey property with all its appurtenant advantages and rights and to convey the most valuable estate the grantor possesses, which includes land underlying a street platted in part for the benefit of the owners of the adjoining lots. *Id.* at ¶¶ 17-19. It also recognized that many courts view the centerline presumption as "an expression of public policy to avoid 'a prolific source of litigation' arising from 'narrow strips of land distinct in ownership from the adjoining territory.'"

*Id.* at ¶ 16 (quoting *Cuneo v. Champlin Refining Co.*, 62 P.2d 82, 88 (Okla. 1936)).

¶ 19    To be sure, the centerline presumption applies only when a grantor conveys property abutting a right-of-way. *Id.* at ¶ 15. And it applies only when the grantor owns the land underlying the right-of-way at the time of the conveyance. *Id.* at ¶ 21. "This is not only a logical limitation on the rule, it is a precondition to applying the presumption." *Id.* Because the purpose of the centerline presumption is to give effect to the presumed intent of the grantor, "[w]here the grantor does not own the fee of the land, the law will not presume that he intended to convey that which he did not own." *Id.* (quoting *Church v. Stiles*, 10 A. 674, 676 (Vt. 1887)).

¶ 20    In addition, because the presumption is a rule of conveyance intended to effectuate the grantor's intent not to retain ownership of narrow strips of land that are of little value to all but adjacent landowners, *Asmussen,* ¶ 22, the rule should not apply if the grantor retains ownership of any property abutting the right-of-way. If the grantor still owns property contiguous to the right-of-way, it cannot be said that the property beneath the right-of-way is only useful (and equally so) to the owners of the adjacent parcels; rather,

the land beneath the right-of-way remains beneficial to the grantor. *Cf. Strait v. Savannah Ct. P'ship*, 576 S.W. 3d 802, 812 (Tex. App. 2019) (explaining as the reason for the similar "strip-and-gore" rule that "[w]here it appears that a grantor has conveyed all land owned by him adjoining a narrow strip of land that has ceased to be of any benefit or importance to him, the presumption is that the grantor intended to include such strip in such conveyance").

¶ 21     In the simplified illustration below, the grantor on the left originally owned all the land beneath and adjacent to the road and conveyed away parcel B but retained parcel A.  Under such circumstances, the centerline presumption does not apply, and the grantor retains any interests in the land beneath the road.  In contrast, the grantor on the right originally owned all the land beneath and adjacent to the road but conveyed away all the property it owned abutting the road.  Under such circumstances, the centerline presumption applies to pass title to the new owners of parcels A and B to the centerline of the road.



¶ 22    Importantly, the centerline presumption applies "unless a contrary intent appears on the face of the conveyance." *Asmussen*, ¶ 20. That is, the presumption can be rebutted. For example, the grantor can state expressly in the deed that the grantee's title does not extend to the centerline of an adjacent right-of-way. *See Olin*, 25 Colo. at 180, 53 P. at 455 ("[T]he general rule [is] that, where a grantor conveys a parcel of ground bounded by a street, his grantee takes title to the center of such street . . . *unless, by the terms of the grant, the boundary of the granted premises is restricted to the line of such street*.") (emphasis added). Conversely, if a grantor legally defines a parcel in a conveyance as extending to the far side of the right-of-way boundary (rather than the near side right-of-way boundary), that may reflect an intent to convey all the property beneath the right-of-way to a particular grantee, rather than

11

allowing for the presumption that the owners of property on opposite sides take title to the center of the right-of-way. The grantor can identify the property underlying the right-of-way as a separate parcel from the lot being conveyed, *see Overland,* 30 Colo. at 173, 69 P. at 576 ("[I]f in that deed . . . mention had been made of [the] street as a distinct and separate lot from the lots conveyed . . . , the grant would have been restricted to the side or edge of the street nearest to those lots, and not extended to its center."), and expressly reserve any interest in the right-of-way, *see id.* at 170, 69 P. at 575 ("[O]ne is presumed to convey the highest estate he owns in the lands granted, *unless a smaller estate is described.*") (emphasis added). And most relevant to this case, the grantor can expressly reserve and thereby sever the mineral estate underlying the right-of-way by "clear and distinct wording in the conveyance" to that effect. *See Radke,* 138 Colo. at 209, 334 P.2d at 1088. We note that these methods are not exhaustive; there may be other ways a grantor can reflect "on the face of the conveyance" an intent to avoid application of the centerline presumption. *See Asmussen,* ¶ 20.

¶ 23    Finally, the burden of proving ownership of real property falls on the person claiming ownership. *Id.* at ¶ 29. To claim ownership of property to the centerline of a right-of-way under the centerline presumption, the adjacent landowner must trace title to the owner of the fee underlying the right-of-way. *Id.* "This is because it is possible that a grantor in that chain of title may have manifested an intent to convey only the property abutting the right-of-way but not the interest underlying it." *Id.*

¶ 24    In summary, we conclude that the centerline presumption applies only when (1) the grantor conveys ownership of a parcel of land abutting a right-of-way; (2) at the time of conveyance, the grantor owned the fee underlying the right-of-way; (3) the grantor conveys away all the property they own abutting the right-of-way; and (4) no contrary intent appears on the face of the conveyance. Because all these conditions must be satisfied before the centerline presumption applies, we further clarify that title to the centerline of the right-of-way passes to the abutting property owners once the last of these conditions is satisfied. In addition, in any action to quiet title, the person claiming title to property under the centerline presumption bears the burden to prove their ownership and must

be able to trace title back to the owner of the fee underlying the right-of-way.

¶ 25    Based on the foregoing, we conclude that the centerline presumption can apply to convey mineral interests beneath a right-of-way to the owners of abutting property, so long as the conditions articulated above have been satisfied. Thus, we affirm the district court's order determining this question of law pursuant to C.R.C.P. 56(h).

### D.    The Conditions for Application of the Centerline Presumption Have Been Met in this Case

¶ 26    The undisputed facts demonstrate that all the conditions for application of the centerline presumption have been met in this case:

> (1)  The developer conveyed parcels of land abutting 11th Street to three grantees. GNP contends that because the developer's dedication of 11th Street was not accepted by the city until after the developer had conveyed two of the adjoining parcels, those parcels did not abut 11th Street when conveyed. But recall that the centerline presumption is a rule intended to give effect to the

14

grantor's intent.  There is no question that the developer intended to dedicate 11th Street before it conveyed any of the parcels.  The developer made the dedication on February 15, 1974, and conveyed the first of the abutting parcels on March 11, 1974.  Even though the dedication had not yet been accepted, the developer would have been estopped from denying the existence of 11th Street as a public right-of-way as to the grantees.  *See Overland*, 30 Colo. at 171, 69 P. at 576; *Near v. Calkins*, 946 P.2d 537, 541 (Colo. App. 1997) ("[T]he attempted common law dedication is not inconsistent with abutting owners owning to the center of the street.").  Even so, by the time the developer conveyed away the last of the property it owned abutting 11th Street, thereby satisfying the last of the conditions to application of the centerline presumption, the city had accepted the road dedication.

(2) The developer owned the fee underlying 11th Street at the time of its conveyance of the abutting parcels to the three grantees.  The parties do not dispute this fact.

(3) The developer conveyed away all the property it owned abutting 11th Street. The parties do not dispute this fact.

(4) No contrary intent appears on the face of the conveyances. Each deed contains the same language, granting "all of the following described lot or parcel(s) of land . . . together with . . . all the estate, right, title, interest, claim, and demand whatsoever of [the developer]." None of the deeds contains any express intent to avoid the centerline presumption, to convey something less than the developer's highest estate, or to reserve any interest whatsoever in the property beneath 11th Street. More specifically, none of the deeds includes an express reservation or exception of the mineral estate.

¶ 27    Once the developer conveyed away the third parcel abutting 11th Street, the last of the conditions was satisfied and the grantees took title to both the mineral estate and whatever interests the grantor retained in the surface estate, to the centerline of the road. Because the current owners of the property abutting 11th Street were able to trace their title back to the developer, they met their burden to prove their ownership of the disputed mineral interests.

### E. GNP's Arguments Against Application of the Centerline Presumption Are Unavailing

¶ 28    Notwithstanding the fundamental principles of property law articulated above — which dictate that, when the centerline presumption applies, it applies to all interests a grantor possesses in the property underlying a right-of-way — GNP contends that the centerline presumption should not apply to mineral estates because (1) applying the presumption violates the axiomatic principle that an unambiguous deed conveys only the property specifically described; and (2) the developer made a statutory dedication of 11th Street, which effected a severance of the mineral estate to which the presumption does not apply.[3]  We reject each of these contentions.

### 1. The Grantor's Intent Must Be Viewed in the Context of Well-Established Property Law

¶ 29    GNP contends that the grantor's intent must be determined solely from the unambiguous text of the deed and that, in the absence of ambiguity, there is no need to resort to "judicial speculation" about the presumed intent of the grantor.  It further

---

[3] The parties also make competing public policy arguments for and against application of the centerline presumption, which we need not resolve to follow settled, binding precedent.

contends that, because the deeds in this case unambiguously did not convey property adjacent to and not included within the parcels described by metes and bounds, the centerline presumption should not apply.

¶ 30   We acknowledge the "universally accepted principle of law that when a deed is unambiguous and unequivocal the intention of the parties thereto must be determined from the deed itself." *Brown v. Kirk*, 127 Colo. 453, 456, 257 P.2d 1045, 1046 (1953). But the deed must be interpreted in the context of the existing law. In that context, a silent deed conveying property abutting a right-of-way is not ambiguous. Such an absolute deed passes the highest estate to the centerline of the right-of-way. *See Overland*, 30 Colo. at 173-74, 69 P. at 576-77 (explaining that, had the grantor intended to convey his interests in a street, "he would have stopped after describing" the parcel abutting the street; instead, because the grantor described the street separately in the deed, he intended to sever it and pass it to the grantee as a parcel distinct from the parcel abutting the street). Under existing law, the deeds in this case unambiguously conveyed to the three grantees of the parcels

abutting 11th Street all the developer's interest in the property, including its mineral interests, to the centerline of the road.

¶ 31     *Morrissey v. Achziger*, 147 Colo. 510, 364 P.2d 187 (1961), on which GNP relies, does not convince us otherwise. *Morrissey* involved a dispute over ownership of land where a street had once existed but had been abandoned many years earlier. *Id.* at 511-14, 364 P.2d at 187-89. The court noted that "there can be no dispute that upon vacation the owners of property abutting [a dedicated street] take and become the fee owners of that portion abutting their property and to the center line of the vacated area." *Id.* at 513, 364 P.2d at 189. Thus, when the street was vacated in 1937, the owner of a parcel abutting the street also became the owner of the land underlying half the vacated road contiguous to that parcel. *Id.* at 513-14, 364 P.2d at 189.

¶ 32     In 1946, that owner conveyed to Morrissey the parcel of land abutting the vacated road without expressly conveying the land underlying the vacated road. *Id.* at 512, 364 P.2d at 188. A decade later, Morrissey conveyed the parcel to the plaintiffs, again without mention of the land where the vacated road used to be. *Id.* The plaintiffs sued to quiet title in themselves to the half of the vacated

street contiguous to the parcel Morrissey had conveyed to them. *Id.* at 511, 364 P.2d at 187.

¶ 33 The court concluded that, because the deed "drawn subsequent to the vacation of the street" did not describe the street, the deed did not convey the street. *Id.* at 514, 364 P.2d at 189. It reasoned: "Certainly a person owning contiguous tracts of land can convey one without conveying the other. A deed which accurately and correctly describes a tract of land is not subject to construction or interpretation." *Id.*

¶ 34 GNP contends that we should apply *Morrisey*'s rationale to reject any attempt to expand the centerline presumption to mineral estates. But *Morrissey* is distinguishable in several ways. In our view, the dispositive distinction is that the conveyance in *Morrissey* would not have satisfied the conditions that *Asmussen* clarified are required (and have always been required) to apply the centerline presumption. Specifically, the grantor who conveyed to Morrissey did not convey a parcel of land *abutting a right-of-way*. *See Asmussen*, ¶ 3 (Under the "centerline presumption" "a conveyance of land *abutting a road or highway* is presumed to carry title to the center of that roadway.") (emphasis added). The road in *Morrissey*

20

had been vacated *before* the parcel was conveyed to Morrissey. Morrissey's grantor conveyed only the parcel of land, which no longer abutted a road, and did not convey to Morrissey the land formerly underlying the road. Under such circumstances, the centerline presumption would not apply and the unambiguous language of the deed conveying only the parcel adjacent to the vacated road would not transfer title to the land that was formerly part of the road. *Morrissey* did not limit the scope of the centerline presumption when it applies.

### 2. Dedication Does Not Vertically Sever the Mineral Estate

¶ 35 GNP next contends that the developer made a statutory dedication of 11th Street, which effected a severance of the mineral estate — both horizontally from the surface estate directly underlying 11th Street and vertically from the balance of the surrounding parcel. It further contends that the severed mineral estate is separate and distinct from the surface estate and is not presumptively transferred with the abutting lots. GNP's argument appears to be premised on a distinction that does not exist under Colorado law between the consequences of a statutory dedication and a common law dedication. We reject GNP's contentions.

21

¶ 36    Dedication is "the appropriation of an interest in land by the owner of such interest to public use." *Turnbaugh v. Chapman*, 68 P.3d 570, 572 (Colo. App. 2003) (citing *Hand v. Rhodes*, 125 Colo. 508, 245 P.2d 292 (1952)). Dedication can occur by common law or by statute, and "if defective under either method, it may be operative under the other." *Fortner v. Eldorado Springs Resort Co.*, 76 Colo. 106, 112, 230 P. 386, 388 (1924).

¶ 37    Common law dedication requires that (1) the property owner unequivocally intends to dedicate the property, and (2) the governmental authority accepts the dedication. *Turnbaugh*, 68 P.3d at 572. Common law dedication grants a local government an easement to use the land for purposes described in the plat. *Id.* at 573.

¶ 38    Statutory dedication under Colorado law applies only to cities and towns. *Id.* at 572. Section 31-23-107, C.R.S. 2021, provides in relevant part that "[a]ll streets . . . designated or described as for public use on the map or plat of any city or town . . . are public property and the fee title thereto vested in such city or town." *See Martini v. Smith*, 42 P.3d 629, 633 (Colo. 2002). The Colorado Supreme Court has clarified that the legislature's use of the term

22

"fee" in this statute is "not according to its technical legal meaning"; instead, the legislature intended "by the use of the term 'street' to vest in the city such estate or interest as is reasonably necessary to enable it to utilize the surface and so much of the ground underneath as might be required for laying gas pipes, building sewers, and other municipal purposes." *City of Leadville v. Bohn Min. Co.*, 37 Colo. 248, 253, 86 P. 1038, 1040 (1906) (interpreting the same relevant language in the predecessor statute and likening the "fee" to an easement).

¶ 39    Because a statutory dedication grants a fee interest — at least in the right-of-way and so much of the ground beneath as required for ordinary use as a street, *see id.* — title to the right-of-way passes to the abutting landowners when the right-of-way is vacated. § 43-2-302, C.R.S. 2021.  Until the right-of-way is vacated, the owner of the property underlying the right-of-way retains a reversionary interest in whatever rights have otherwise vested in the city or town, which interest is capable of being transferred.  *Olin*, 25 Colo. at 181, 53 P. at 456 (explaining that, through statutory dedication, "the city only acquired a qualified fee in such streets for these [public] purposes; so that there still remained in the

23

proprietor a reserved right in such streets which was capable of being transferred by deed to the purchaser of abutting lots as rights appurtenant thereto").

¶ 40    Under either dedication scenario, the mineral estate beneath the right-of-way does not pass to the government but is retained by the dedicator. *See Bohn*, 37 Colo. at 252, 86 P. at 1040. Because a common law dedication conveys only an easement, the dedicator retains the fee interest in the unified surface and mineral estates. *See City of Denver v. Clements*, 3 Colo. 472, 480-81 (1877). Because a statutory dedication conveys a fee interest only in the surface estate, however, the mineral estate beneath the right-of-way is effectively horizontally severed from whatever interest passes to the city or town and is retained by the dedicator along with a reversionary interest in the surface estate. *See Bohn*, 37 Colo. at 252-53, 86 P. at 1040; *Olin*, 25 Colo. at 181, 53 P. at 456.

¶ 41    But GNP contends that a statutory dedication not only severs the mineral estate *horizontally* from the surface estate underlying the right-of-way, it also severs the mineral estate *vertically* from the surrounding property. GNP argues that the severed mineral estate beneath the right-of-way becomes a separate and independent

24

parcel and should not be transferred presumptively with the abutting lots. In support of this argument, GNP relies heavily on a divided Wyoming Supreme Court decision in *Town of Moorcroft v. Lang,* 779 P.2d 1180 (Wyo. 1989).

¶ 42    *Moorcroft* similarly involved a dispute over the ownership of mineral rights under land dedicated as streets and alleys to the Town of Moorcroft and the application of what Wyoming calls the "presumed intent rule." *Id.* at 1182. Like the centerline presumption in Colorado, the presumed intent rule in Wyoming "holds that a conveyance by a developer of a subdivision lot includes fee title to not only the lot described, but also to the middle of the street upon which that lot abuts." *Id.* Notably, "[t]he conveyance includes the mineral estate beneath the lot unless it is specifically reserved by the grantor." *Id.*

¶ 43    As in Colorado, a common law dedication under Wyoming law does not affect title to the fee but creates a surface easement for the benefit of the public to use as a public street. *Id.* As applied to a common law dedication, the presumed intent rule operates to pass title to the middle of the adjoining street and includes the entire fee absent a reservation of the mineral estate. *Id.* at 1184.

25

¶ 44     Also as in Colorado, a statutory dedication under Wyoming law vests a public authority with a fee interest "to only the surface estate and a limited portion below ground sufficient to accommodate the various public utilities." *Id.* at 1183. But according to the three-justice majority in *Moorcroft*, a statutory dedication under Wyoming law creates three separate interests: (1) "an estate in fee simple determinable in the surface estate conveyed to the public authority"; (2) the possibility of reverter in the surface estate; and (3) a separate mineral estate beneath the street, severed both horizontally from the surface estate and vertically from the mineral estate of the adjoining property. *Id.* at 1184. (*See* Figure 2 below.)

¶ 45     Wyoming dictates that, if the dedicator sells the property abutting the street, the possibility of reverter passes by operation of law to the subsequent owners even if not described in the deed. *Id.* The Wyoming Supreme Court was asked to decide whether the severed mineral estate passes to the abutting lot owners in the same way as the possibility of reverter in the surface estate. Because, as a general rule, a grantee can acquire only the land described in a deed, the majority reasoned it would "be creating a

26

special rule of conveyancing" were it to apply the presumed intent rule to transfer the severed mineral estate. *Id.* at 1186.

¶ 46     The two dissenting justices acknowledged that a statutory dedication effects a *horizontal* severance of the mineral estate from the surface estate but explained that Wyoming precedent had rejected the theory that such dedication effects a *vertical* severance of the mineral estate underlying the street from the mineral estate underlying the abutting property. *Id.* at 1187 (Cardine, C.J., dissenting). Instead, statutory dedication "results in a severance of only the width, depth and length of the property required for the street. The dedicator still retains the entire remaining estate, including the complete and undivided mineral estate underlying his property." *Id.*

¶ 47     Chief Justice Cardine explained,

> While the conveyance [of land abutting a street] cannot grant the street area itself because the fee is held by the municipality, there is nothing in the record to indicate intent of the grantor to reserve the mineral estate under the streets. The intent of the parties at the time the conveyance is made is not subsequently altered by the discovery of valuable minerals. I see no reason to imply a reservation merely to provide a windfall to the grantor. A basic principle of conveyancing is

27

> that reservations and exceptions must be expressly spelled out; in the absence of such language, a conveyance is presumed to transfer the entire estate owned by the grantor.

*Id.* at 1188.  He concluded that application of the common law would result in title to the mineral estate under the street being in the abutting landowners.  *Id.*

¶ 48    We find the reasoning of the dissent in *Moorcroft* persuasive and more consistent with Colorado law than the majority's reasoning.  Although a statutory dedication conveys a fee interest in the right-of-way to the city or town in so much of the surface as is necessary for use of the street and thereby horizontally severs the mineral estate from that surface interest, nothing in Colorado statutory or common law suggests that the mineral estate is also severed vertically from the surrounding property.  Rather, upon dedication, the dedicator retains the entire residual estate beneath and adjacent to the right-of-way as a contiguous estate, along with a right to reverter in the interest conveyed to the city or town.  (*See* Figure 1 below.)  Neither a common law dedication nor a statutory dedication creates a separate mineral estate bounded on its sides

by a vertical extension from the edges of the street above.  *See id.* at 1186.



¶ 49     GNP further argues that Colorado's road vacation statute, § 43-2-302, implicitly recognizes the horizontal and vertical severance of the mineral estate beneath a right-of-way.  In relevant part, that statute provides that, whenever a roadway has been dedicated and later vacated, "title to the lands included within such roadway . . . shall vest" in the owners of land abutting the vacated roadway.  *Id.*  GNP argues that, if title to the mineral estate has already vested in the adjacent property owner under the centerline presumption, there would be no need for the statute to direct that title vest in such owner when the road is vacated.

¶ 50    But all the municipality receives when a right-of-way is statutorily dedicated is a fee interest in the right-of-way and so much of the ground beneath as required for ordinary use as a street. *Bohn*, 37 Colo. at 252, 86 P. at 1040. The municipality does not receive any mineral interests. *Id.* Logically, then, the only interest that reverts to and "vests" in the abutting property owners upon vacation of a dedicated right-of-way is the "qualified fee" interest that had previously vested in the municipality. *See Olin*, 25 Colo. at 181, 53 P. at 456. The road vacation statute does not restrict a grantor's right to convey any and all remaining interests in the property surrounding the right-of-way.

¶ 51    In sum, we see no reason to apply the centerline presumption differently to a common law dedication than to a statutory dedication.[4] And we conclude that the district court correctly determined that all conditions for application of the centerline presumption were met in this case, such that title to the mineral

---

[4] The district court did not resolve whether the dedication in this case was a common law or a statutory dedication. Given our analysis, that fact question is irrelevant.

interests beneath 11th Street passed to the owners of the abutting property.

III.    Scope of Decree Quieting Title

¶ 52     GNP contends the district court erred in entering its decree quieting title by (1) not quieting title to the mineral estate beneath 11th Street in GNP, and (2) quieting title to the entire mineral estate in the two landowner defendants that had participated in the proceedings.  We reject the first contention but agree with the second.

¶ 53     Because we have concluded that the district court correctly applied the centerline presumption to hold that the mineral interests beneath 11th Street passed to the owners of abutting property, we likewise conclude that the court did not err by refusing to quiet title to the mineral estate beneath 11th Street in GNP.  *See Hinojos v. Lohmann*, 182 P.3d 692, 697 (Colo. App. 2008) ("[T]he plaintiff may not capitalize on the weakness of the defendant's claim to title, but can succeed only by establishing the strength of his or her own claim to title."); *Morrissey*, 147 Colo. at 513, 364 P.2d at 189 (same).

¶ 54    Although GNP named as defendants the owners of all the parcels abutting 11th Street, several of those landowner defendants defaulted or disclaimed any interest in the subject property. Only Hospice and Palliative Care of Northern Colorado, Inc. (Hospice) and Vevest LLC answered the complaint and participated in the proceedings. The district court quieted title to the entire mineral estate beneath the relevant section of the right-of-way in these two entities. This was error.

¶ 55    To facilitate entry of final judgment, the parties submitted a stipulation that identified the then-current owners of the surface and mineral estates in each of the nine parcels that abut 11th Street. It is undisputed that Hospice and Vevest each own just one of the nine parcels.

¶ 56    The district court could not quiet title to the mineral interests conveyed with the other seven parcels in either Hospice or Vevest. But the court also could not quiet title in any non-appearing landowner defendants. A court cannot quiet title in favor of a defaulting or disclaiming party, even where evidence presented by an appearing party supports the defaulting party's title interests. *Reser v. Aspen Park Ass'n,* 727 P.2d 378, 380 (Colo. App. 1986); *see*

*also Osborne v. Holford*, 40 Colo. App. 365, 368, 575 P.2d 866, 868 (1978) ("[I]f a plaintiff fails to establish his own title, he is in no position to force non-defaulting defendants to adjudicate the status of their claims."). Instead, the court should have quieted title only to the mineral interests owned by Hospice and Vevest and dismissed the balance of the action, leaving the other parties in the same position they were in before GNP commenced this action. *See Osborne*, 40 Colo. App. at 368, 575 P.2d at 868. We remand the case for the court to correct this procedural error.

## IV. Disposition

¶ 57 We affirm the district court's November 2019 Order determining a question of law. We reverse the district court's final judgment and decree quieting title and remand the case with instructions to enter a new decree quieting title only to the mineral interests owned by Hospice and Vevest and dismissing the case as to all other parcels and defendants.

¶ 58 JUDGE VOGT and JUDGE HAWTHORNE concur.